The State of Nevada *v.* The Western Union Telegraph Company.

---

## THE STATE OF NEVADA, Respondent, *v.* THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

GENERAL DENIAL IN SWORN ANSWER INOPERATIVE. A general denial in an answer which is required to be verified is inoperative; the very object of putting a defendant on his oath being to have a specific answer on his conscience as to each separate allegation of the complaint.

WHEN ASSESSMENT ROLL TO BE MADE. The time prescribed by the revenue law (Statutes of 1866, 169) within which the Assessor is to complete his assessment roll, is only for the convenience of other officers; if the Assessor is dilatory he may render himself liable on his bond, but his dilatoriness furnishes no matter of which a tax-payer can complain, or on account of which he can defeat the tax.

NOTICE OF ASSESSMENT ROLL, BEFORE COUNTY COMMISSIONERS. The notices prescribed by the revenue law (Statutes of 1866, 169) to be given of the fact that the assessment roll is in the hands of the clerk of the Board of County Commissioners, and of the time of the meeting of the Board as a Board of Equalization, are only to enable parties to appear and contest the accuracy of the assessment, so that if a party appear before the Board, he cannot complain of the want of notice, or that no notice was given as required by the law.

CERTIFICATE OF ASSESSOR TO ASSESSMENT ROLL. There is no particular form required for the certificate of the assessment roll, nor does it have to be a sworn certificate.

DEMAND FOR SWORN STATEMENTS NOT INDISPENSABLE. An assessment for taxes by the Assessor is not vitiated by the fact that he omitted to demand a sworn statement.

WHEN OBLIGATION OF TAX-PAYER BECOMES FIXED. When an assessment for taxes is made, and the Board of Equalization has acted thereon, an obligation immediately arises to pay the State the amount of taxes fixed; and it is idle to inquire into irregularities in the conduct of officers after the liability of the tax-payer is thus determined.

BURDEN OF PROOF IN TAX SUITS. In a suit for delinquent taxes, it is sufficient on the part of the State to show a regular assessment, without being required to prove a delinquency. The only defenses that can be made to resist a judgment are affirmative in their character, and must be specially pleaded and affirmatively made out by the defendant.

The State of Nevada *v.* The Western Union Telegraph Company.

WHEN TAX-PAYER IS IN DEFAULT. A tax-payer is not in default until he has had an opportunity to pay the taxes assessed against him; so that if there is no person authorized to receive the taxes until the delinquent list goes into the hands of the District Attorney, the tax-payer on receiving notice of that fact, ought to be allowed to pay the tax without any penalty being imposed.

THE LAW OF TAX SUITS. The strict compliance with all the provisions of the statute required to be shown in cases where property is sold for taxes without a judgment, is not applicable to cases of suits for delinquent taxes in the district courts where jurisdiction has once been acquired.

APPEAL from the District Court of the Seventh Judicial District, Churchill County.

The facts are stated in the opinion.

*D. Cooper* and *J. C. Foster*, for Appellant.

Plaintiff failed to prove that the Assessor had completed his list and delivered it to the clerk of the Board of County Commissioners before the second Monday of September; on the contrary, it was proven that the list was delivered on the third Monday of September; nor was any notice proved to have been published or posted of the fact that the assessment roll was in his hands, nor any notice of the time of the meeting of the Board of Equalization. Again, there was no proof that the tax was delinquent, or that after the adjournment of the Board of Equalization the clerk had made the corrections required by the law; nor was there any certificate attached to the assessment roll; nor any proof that the clerk delivered the same to the *ex officio* Tax Collector as required by law; nor any proof showing that the *ex officio* Tax Collector, on the third Monday in November, made a levy, or filed in the office of the Auditor a list of all persons and property then owing taxes; or that any list was made out before the last Monday in November; nor was there any proof that the Auditor published or posted any notice as required by law.

The delinquent list was not offered in evidence; had it been offered the plaintiff would have made out a *prima facie* case; but not having done so, the State must show a strict compliance with the law. The statute (Statute of 1864–5, 287, Sec. 34) having made the delinquent list *prima facie* evidence of the regularity of the steps taken by the officer, it *ex vi termini* excludes the assess-

ment roll as evidence to prove a delinquency. *Expressio unius est exclusio alterius.*

But were we to admit that a delinquency could be proven in any other manner than by the production of the list, or a certified copy, still the objection would be fatal, for the reason that no delinquency was shown. The plaintiff offered in evidence the assessment roll and minutes of the Board of Equalization, and then rested *in medias res.* This evidence, if it proved anything, only proved that an assessment had been made, and that the Board of Equalization had met and refused to make a reduction of the defendant's tax. The law (Statutes of 1866, 171, Sec. 6) provides for a delinquent list, and the manner in which it shall be made out. Blackwell, speaking of a statute which requires a delinquent list to be made out, says: "When such is the requirement, it is regarded as imperative and not directory, and an exact compliance is demanded. This return is the only evidence of delinquency—of the fact that a demand was made by the collector upon the person against whom the tax is charged." "Besides, the return is the foundation of the authority of the Supervisor—to whom it is required to be made—to sell or order a sale of the land of the delinquent." "A neglect therefore to make this return in the form, manner, and time prescribed, is fatal to the validity of a tax sale." (Blackwell on Tax Titles, 214 ; Ib. 197.)

As the law now stands, it is imperative on the State to show that the taxes have not been paid ; and that end is accomplished by introducing the delinquent list. No presumption will be indulged in to cure an error which is so palpable as the one now under consideration. (Blanchard on Tax Titles, 215, 625 ; *Moore* v. *Patch,* 12 Cal. 270 ; *State* v. *Poulterer,* 16 Cal. 523.)

The mere assessment of a tax does not create a debt against an individual, or against his land. It was the obvious intention of the Legislature to substitute the publication of a notice of the delinquent list for a personal demand of the payment of the tax. The tax-payer must be in default before he can be regarded as *delinquent,* and he cannot be in default until he is notified of the existence of the tax, and an opportunity offered him to pay it. In this case there is no evidence tending to show that a delinquent list

was made out, or that any matter was published.  If the plaintiff has made a case against the defendant in this action, then it practically does away with the necessity of making a delinquent list, or, in fact, of doing anything more than making an assessment. It would be a startling doctrine to say that a person might be sued for his taxes before he had an opportunity of paying them.

Again, there is no certificate to the assessment roll.  The Assessor evidently intended to do something in the way of swearing, or .certifying, but failed to do either, as " I do solemnly swear," when the evidence is that he don't swear, is certainly no certificate. Besides, the law does not provide for an affidavit, and even if it were otherwise good as a certificate, it was made one week after the time provided by law, and then he had no more right to make it than any other person.  (Blackwell on Tax Titles, 144, 214.)

Again, under the law (Statutes of 1866, 168) the Assessor can only make an assessment after a demand for a sworn statement. This, we think, is the plain meaning of the law.  In this case no demand was made, nor was the property ever assessed in the manner provided.  The plaintiff, therefore, has no standing in Court. The listing and valuation of the property in the manner prescribed by law is essential to the validity of the tax.  (Blackwell on Tax Titles, 130, 178, 183.)

*Robert M. Clarke*, Attorney General, for Respondent.

The answer of the defendant below does not set forth any defense authorized by law.  (Statutes of 1864–5, 287, Sec. 32.) None of the defenses allowed by the statute are attempted to be pleaded, *except fraud*.  No facts or circumstances constituting fraud are pleaded or proven, and no *injury* is shown to have resulted to the defendant.  It is absurd to say that " omitting to put down for taxation real or personal property constitutes fraud in the assessment," or that by such omission (which is not even attempted to be shown by proof) the " defendant has suffered injury."

But granting the answer in this particular sufficient, the averments are new matter, all of which are in law denied, and must be affirmatively established by proof.  As the record contains no such

evidence the defense failed, and no new trial can be granted for this reason or upon this ground.

The objection to the introduction of the assessment roll as evidence is not well taken. The rule *expressio unius est exclusio alterius*, has no application. The idea that by creating new evidence (which is *prima facie* only) the Legislature have destroyed all other proof, is equally novel and absurd. The assessment roll was not only competent evidence, but the very highest the nature of the case would admit. This established the value of the property, amount of tax, etc., and the burden of showing payment was upon the defendant. The non-payment of the tax is charged in the complaint, and is nowhere denied in the answer. It is not pleaded as a defense, and must be taken as true, and with the proof made by the assessment roll, completes the plaintiff's case.

By the Court, BEATTY, C. J.

This was an action brought by the State to recover $544, alleged to be due from the defendant, a corporation, for taxes levied for the fiscal year 1867. A judgment was rendered for the plaintiff, and defendant appeals. The complaint is all in due form, and there is no objection that it does not state the facts necessary to sustain a judgment for the plaintiff.

Section 32 of the Revenue Act requires the answer to be verified in all suits for taxes. In this case the answer was verified, and commences by a general denial of all allegations of the complaint.

Nothing can be better settled than that a general denial in an answer which is required to be verified, is inoperative. The very object of putting the defendant on his oath is to have a specific answer on his conscience to each separate allegation of the complaint. The general denial, then, amounts to nothing. Beyond the general denial, the answer contains substantially the denials and averments of new matter.

The legality of the assessment is denied, but in general terms. It is denied that the Assessor assessed, or put on the assessment roll, all the property in the county, but on the contrary, unlawfully omitted some portion thereof. Denies that the assessment roll was

submitted to the Board of Equalization. Denies that the real estate or improvements described in the complaint was assessed to defendant, and denies that a tax of $544.50 was ever legally assessed thereon. Denies that there was a separate valuation of the real estate and improvements and personal property of defendants. Avers that the assessment was fraudulent and void, and not made according to the statute. That the assessment was at a rate greatly exceeding the value of the property, and void. That the assessments made by the Assessor in the county are unequal, fraudulent and void. That no demand was made on defendants for a sworn statement of their property. That no demand was made for the taxes before suit was brought.

This was the substance of the first answer. There is a supplemental answer, which adds nothing substantially to this, except the allegation that the defendant did own in September, 1867, the property described in the complaint.

Upon this complaint and answer the parties went to trial. The plaintiff introduced the assessment roll, and also the minutes of the proceedings of the Board of Supervisors, showing that the defendants had gone before that Board seeking to have the assessment lowered, and the Board refused to lower the assessment, because there was no satisfactory evidence offered to show the valuation was too high.

There was oral testimony to show that the book offered by the plaintiff as the assessment roll of 1867, was in fact the assessment roll made out by the Assessor, and handed by him to the Auditor. There was also oral testimony that the agent of defendant went before the Board of Equalization and sought to have the assessment lowered, but the Board refused to lower it. The assessment roll was objected to because of the want of a proper affidavit or certificate thereto. The only affidavit or certificate is in the following form:

" STATE OF NEVADA,        )
        " County of Churchill.  }

" I do solemnly swear the foregoing is a full and true statement of the property in Churchill County, to the best of my knowledge and belief.

                              " J. B. WELSH, Assessor."

The Auditor swears that he took the oath of the Assessor to this affidavit on the 17th of September, but failed to add the jurat or his certificate to the oath.

When the plaintiff rested, the defendant moved for a nonsuit. This being refused, the defendant introduced a witness who proved that he was the agent of the Telegraph Company in Churchill County; that the Assessor had never called on him for a sworn statement as to value of property; that he had gone before the Board to get a reduction of the taxes, etc. This was all the material testimony in the case. Judgment was rendered for the plaintiff. The defendant moved for a new trial, and that motion having been denied, now appeals to this Court.

The first ground on which appellant relies is, that the Assessor failed to complete his assessment and hand it to the clerk of the Board of County Commissioners before the second Monday of September. The time prescribed, within which the list shall be completed, is only for the convenience of the other officers, who have their duties to perform. If the Assessor is dilatory in making his return, he may derange the action of other officers, and render himself liable on his bond for any damage the State may suffer; but this is no matter of which the tax-payer can complain; it does not injure him.

It is also objected that no notice of the facts that the list was in the hands of the clerk of the Board of County Commissioners, or of the time of the meeting of the Board, was shown to have been given. Those notices are only to enable parties to appear before the Board and contest the accuracy of the assessments. The defendant did appear by its agent, and cannot therefore complain it did not have notice.

The next objection is, that there was no certificate attached to the assessment roll by the Assessor. The law does not prescribe any form for such certificate. It is just as good a certificate to write on a book or paper, I swear that I have done a certain thing, as to write I certify I have done the same thing. We see no defect in the certificate. The swearing the Assessor to his return did no good and it did no harm. It is claimed that the assessment is void because the Assessor failed to demand a written statement of the

taxable property of the defendants before he made the assessment. In answer to this proposition we may say, first, the sworn statement of parties is simply required for the protection of the State, and not for the protection of the tax-payers. It is to prevent property being concealed, and thereby escaping taxation. It is not for the purpose of enabling parties to fix a value on their own property. Where property is visible and open to inspection, the Assessor should exercise his own judgment in the valuation, and not be governed by the opinion of the tax-payer. Some articles of taxation, such as choses in action and some other things, are not subject to the inspection of the Assessor, and doubtless he has in such cases to be governed in a great measure by the oath of the tax-payer. But in regard to real estate and other tangible property it can be no detriment to the tax-payer that he fails to call for a sworn statement. That failure may injure the State in failing to bring hidden property to the notice of the Assessor, but cannot injure the tax-payer. Besides, in this case it is not shown that defendant had any officer in the county, or any agent authorized to make a list of its assessable property, or if the agent at West Gate had such authority it is not shown that the Assessor knew it. Clearly, under the reading of the sixth section, the officer must, if he knew of no owner in the county, or no properly authorized agent, proceed to make the assessment on his own knowledge, without the sworn statement.

These are all the objections which go to the regularity of the assessment. When the assessment was made, and the Board of Equalization had acted thereon, then an obligation immediately arose to pay the State the amount of tax thus fixed. This obligation having arisen, it can only be discharged by the payment of the money. It is perfectly idle to inquire what irregularities may have occurred in the conduct of officers after the liabilities of the defendant were fixed and determined. No act of theirs could release the defendant from its obligation to pay so much money to the State. Even if the tax collector had given his receipt for the taxes, and marked them paid on the assessment roll, it would not have been conclusive on the State. It would be *prima facie* evidence that the taxes had been paid, but certainly not conclusive. The State would be allowed to show that the receipt was given by mistake,

obtained by fraud on the part of the defendant, or fraudulently and collusively issued by the tax collector. Where a party once owes a debt, or incurs a pecuniary liability, we know of but five ways he can get rid of the liability. First, payment; second, accord and satisfaction; third, release; fourth, by lapse of time until the Statute of Limitations runs; fifth, by discharge in bankruptcy. Here the debt or liability is established clearly, and the debtor has not shown itself discharged in any of these ways. These defenses are all affirmative, and must be set up and proved by the defendant. The only defense really set up by the defendant is the illegality of the assessment, and on that point it utterly fails to introduce any pertinent evidence.

The failure of the plaintiff to introduce the delinquent list could certainly do no more than throw on it the necessity of proving a regular assessment. There was no necessity of proving a delinquency. When the assessment is once properly made it then becomes the duty of the tax-payer to seek the proper officer and pay his taxes. The officer is not required to make any demand of the taxes. If the payment has not been made within a given time the State has a right of action. If the payment has been made it must be pleaded when the suit is brought.

The foregoing principles, we think, are founded upon reason and common sense. When a debt legally created is once shown to be due to an individual, the debtor can only be discharged in one of the five ways we have mentioned. No misconduct of the creditor, no irregularity on his part, can release the debtor from his obligation. Why, then, should an irregularity on the part of a State officer, which in no way injures the tax-payer, relieve him from his just obligation to pay his pro rata of the State expenses? But we are not left to common law principles alone to settle this question; the statute itself in express terms discloses "that the acts herein required between the assessment and commencement of suit shall be deemed directory merely." (See Section 32 of Revenue Act.)

If these intermediate acts are merely directory, certainly an omission of any or all of them will not release the tax-payer from his obligation to the State.

If there was a failure to place the assessment roll in the hands

of the tax collector, or if there was a vacancy in that office, so that a tax-payer had no opportunity of paying his taxes between the time of his assessment and the time when the delinquent list came into the hands of the District Attorney, and the District Attorney, without notice either personally or by publication to tax-payer, were to bring suit for delinquent taxes, we have no doubt the defendant might, on being sued, tender his taxes to the District Attorney, or might bring them into Court with his answer, and claim to be relieved from the costs of the action and the ten per cent. damages.

On every principle of justice he would be entitled to this relief. The amount of tax is fixed by the assessment and equalization of the value of this property, but the damage for non-payment can only be legally incurred where the party has had an opportunity to pay. If there has been no person legally authorized to receive the taxes, there has been no default in not paying; but when one is legally authorized to receive, (as is the case where the District Attorney receives the delinquent list) and the tax-payer receives notice of the fact, then a failure to pay will put him in default.

If he wishes to escape the ten per cent. penalty and costs, he must pay when he does have the opportunity. The suit is notice that the District Attorney had authority to collect the taxes. Defendant's duty, then, is plain. He must tender the tax, and plead the facts by way of defense, which excuses him from the penalty.

The citations from Blackwell on Tax Titles have no relevancy to a case of this kind. When property is sold for taxes without a judgment, any failure of the officer in the preliminary steps preceding the sale makes it void, for the very good reason that that is an *ex parte*, extra-judicial proceeding, and the officer can only act strictly according to the provisions of the statute. If he fails to do so, his authority or jurisdiction is gone. But here there is no question about authority, jurisdiction, or anything of the kind.

Nobody disputes the jurisdiction of the District Court over the subject matter, nor over the parties, where the summons has been regularly served. The simple question is : Does the defendant owe so much money to the State ?

Judgment affirmed.

JOHNSON, J., dissented.