THE PEOPLE, APPELLANTS, v. C. W. MOORE, RESPONDENT.

TAXATION—BLENDING TAXES.—The blending together of the several different kinds of taxes, in an assessment roll, invalidates the entire tax.

CONSTRUCTION OF STATUTES.—Acts of the legislature are not to be construed retrospectively, so as to take away vested rights, although they may alter or modify the remedy, nor can a healing act affect existing judgments.

SUITS TOR TAXES—COSTS.—In a suit for taxes, although the defendant re-
covers, the judgment should be general, without costs.

APPEAL from the second judicial district, Ada county.

*F. E. Ensign and J. Brumback,* for the appellants.

*R. Z. Johnson and Huston & Gray,* for the respondent.

PRICKETT, J., delivered the opinion. HOLLISTER, C. J.,
and CLARK, J., concurred.

This action was instituted to recover taxes on five hun-
dred and eighty shares of stock in the first national bank of
Idaho.   It is alleged in the complaint that there was duly
levied and assessed thereon, for the fiscal year 1875, a territo-
rial tax of four hundred and thirty-eight dollars and seventy-
five cents, and a county tax of eight hundred and twenty-
seven dollars and fifty cents.   The answer denies, among
other things, that said taxes were duly assessed, and also
that any taxes were due from defendant to plaintiff.   The
cause was tried by the court, without a jury, and the assess-
ment roll of 1875 being introduced in evidence, it appeared
therefrom that all the different kinds of taxes were blended
together and set down in a column headed "Total taxes,"
and that there were no columns or spaces in the roll for the
several different kinds of taxes of which the total taxes are
composed.   The court below held that plaintiff could not
recover because the several kinds of taxes were not appor-
tioned and placed in separate columns; and rendered judg-
ment on the merits, in favor of the defendant, and also
awarded and adjudged the costs of suit against the plaintiff.
A motion for a new trial was afterwards made upon a state-
ment of the case, which motion was denied, and the plaint-
iff appeals to this court from the judgment and the order
denying a new trial.   On the ninth day of January, 1877,
since the appeal was perfected, the legislature passed an
act entitled "An act to legalize the assessment, the assess-
ment roll, and delinquent list of Ada county, for 1875."

The errors assigned are, in substance, that the decision
of the district court is against law in holding that it
was necessary to a valid assessment, that the assessor

should place in separate columns the different kinds of tax; that he should apportion the taxes, separating the county from the territorial; and that it was error for the court to render judgment in favor of the defendant for costs. It is also urged by the appellant, that the defect in the assessment, if any existed, has been cured by the act of January 9, 1877. It is further claimed, now here, for the first time, that the defenses set up in the answer are prohibited by section 39 of the revenue act. This last objection might properly have been made in the court below by demurrer to the answer, but as it goes to the whole defense, and is one of the objections that, under the statutes, is never deemed to be waived, it may be raised for the first time in this court, and we will first consider and dispose of that objection.

There is nothing in the record which shows that the defendant was, at the time of the assessment, the owner of real estate, within Ada county, of the value of three times the taxes due from him; nor anything to show that he was then the owner of any real estate, except the allegation in the complaint that there was assessed to him real estate upon which the taxes had been paid. Section 27 of the revenue law provides that "the county assessor shall be *ex officio* tax collector, and is hereby authorized to receive and collect all poll taxes, and hospital taxes, except traders', gambling, hurdy-gurdy, and bawdy-house licenses, until such time as required to complete the assessment; and upon the entry of movable property to any person, firm, corporation, association, or company who does not own real estate within the county, of an actual value equal at least to three times the amount of all the taxes due and owing from such person, firm, corporation, or company, to demand the payment of taxes on the same." It further provides that in case of neglect or refusal to pay such taxes, the assessor shall seize sufficient personal property of the party and proceed, summarily, to sell the same, or sufficient thereof to satisfy the taxes and costs of sale.

We can not presume that the defendant was the owner of real estate equal in value to at least three times the amount

of the taxes due and owing by him, but on the contrary, the presumption is that the plaintiff stated its case in the complaint as strongly as the facts would warrant, and that the defendant's real estate was not of that value. The property upon which the taxes are sought to be recovered in this action is of that character, for aught the record shows, upon which the taxes should have been collected by the assessor as *ex officio* tax collector; by distraint and sale of that or other personal property belonging to the defendant, as provided by that section of the revenue act.

The suit prescribed by the revenue laws, for the recovery of taxes, is to be resorted to in cases where the party is the owner of immovable property or real estate, sufficient in value to secure the full amount of taxes by reason of the lien which the assessment creates, and also to secure the probable costs of enforcing such lien and collecting the taxes by suit; and the legislature by this statute has determined that such property must be of at least three times the value of the total taxes, in order to constitute sufficient security. Section 39 of the revenue act, prescribing and limiting the answer and defenses, is applicable to such statutory action only, where the taxes sued for are due upon real estate, or upon mixed property, consisting of both real and personal. It can not be claimed that it was intended to be applied to a suit of this character, because it is provided and contemplated by the statute, that the taxes sought to be recovered in this action should have been collected in another mode, viz., by distraint and sale. The limitation of the defenses which may be set up, is in derogation of the general rule, and ought not to be extended to cases which are not clearly within the letter of the law limiting them; certainly not to cases in which another mode for collecting the taxes is specially provided. An action may be maintained to recover taxes on movable property, not by virtue of section 39 of the revenue act, but as an additional or cumulative remedy to that specially prescribed by section 27 of the statute, and by virtue of the common law right to sue upon an obligation or liability, and in such a case the ordinary rules of pleading must govern; the defendant may,

by answer, deny any of the material allegations of the complaint. We conclude that the answer in this case is sufficient as a defense.

The next question to be considered is, did the district court commit error in deciding that the asessment was invalid because the several different kinds of taxes were not separately set down in the assessment roll? Section 2 of the revenue act provides that "the board of commissioners of such county shall, prior to the first Monday in April, each year, cause to be prepared suitable and well bound books, for the use of the assessor, in which he shall enter the tax list, or assessment roll, as hereinafter provided. Said books shall contain suitable printed or written heads, and be ruled to conform with the form of the assessment roll as provided by this act." Section 18 of the same act provides that "it shall be the duty of the assessor to prepare a tax list, or assessment roll, alphabetically arranged, in the book or books furnished him by the board of commissioners for that purpose, in which book or books shall be listed or assessed all the real estate, improvements on public lands, and all personal property within the limits of the county; and in said book or books he shall set down in separate columns: 1. The date of the assessment. 2. The names of the taxable inhabitants, etc. 3. All real estate and improvements taxable to each inhabitant, etc. 4. The cash value of real estate, and improvements thereon. 5. The cash value of all improvements on real estate when the same is assessed to a person other than the owner of said real estate. 6. The cash value of all personal property, etc. 7. The total value of all property taxable to each, etc. 8. He shall also place in a separate column, opposite the name of each person liable to pay a poll tax, the figure one (1). The form of the assessment roll shall be substantially as follows." Then follows the form, the four last columns of which are headed respectively as follows: "territorial tax," "county tax," "total tax," "remarks." Section 23 provides, among other things, that, after the board of equalization has performed its duties with reference to the assessments, the clerk of said board shall

"carry out in a separate money column, the totals of taxes composed of territorial, county, and other taxes to each person, etc."

It is clear, from the several provisions of the revenue act, that it is the duty of the board of commissioners to furnish the assessor with a book, or books, in which there is a column for each different kind of tax to be collected for that year; that it is the intention and meaning of the law that all these columns shall be properly filled, and that the totals of taxes shall be carried out in a separate money column. The language of the law, as well as the form of the assessment roll prescribed by it, considered either separately or together, lead irresistibly to this conclusion.

It is an established rule that when a particular form of assessment roll is prescribed by the statute, that form must at least be substantially followed; the courts will not admit the substitution of a different one. It is a substantial right of the person assessed that he should be informed by the assessment roll itself, what the character of each item of the total taxes is; whether they are such in kind and amount as the law levies or authorizes to be levied. It is important that he should be so advised, in order that he may pay or offer the amount of any one tax which he believes to be authorized by law, and to resist the collection of any which he deems illegal. It is quite impossible to determine from the assessment under consideration, whether any portion of the tax is of a kind levied or authorized by law, and its introduction as evidence does not establish the facts alleged in the complaint, viz.: that a territorial tax of four hundred and thirty-eight dollars and seventy-five cents, and a county tax of eight hundred and twenty-seven dollars and fifty cents, was levied and assessed upon the property described for the year 1875. These views are thoroughly supported by authority. In the case of *The People* v. *The New York and Owyhee Mining Co.*, and other cases decided by this court at the January term, 1870, it was held that the valuations of real estate and personal property could not legally be set down in an aggregate column or amount; and that if such valuations were blended together, the whole assess-

ment was invalidated. The reason given by the court in those cases was, that the taxpayer must be informed by the assessment roll what value is placed upon the real, and what on the personal property, so that he may determine whether or not to apply to the board of equalization for a reduction, on either class of property, or upon any description of real estate. It is quite as necessary, for the reasons given above, that the taxes should be separately stated.

Blackwell, in his work on tax titles, says: "Taxes ought to be kept separate, not blended together, so that the taxpayer may look into each one of the taxes separately and have its legality determined. A confusion of the several taxes can not take place without invalidating the whole assessment." (Blackwell on Tax Titles, 163.) The case of *Merrill* v. *Swartz*, 39 Ill. 108, was an action of ejectment in which the plaintiff relied for a recovery upon a tax sale and deed, and the question was as to the validity of the title. The revenue law of that state under which the decision was made, required the collector to file with the county clerk a list of the delinquent lands or town lots five days before the commencement of the term at which application for judgment was to be made. The law further provided that the clerk should receive and record this report in a book to be kept for that purpose; "which book shall be ruled and headed as near as may be in the following form." A form is then given, from which it appears that this report should show the owners' names, the description of the land, the valuation, the state tax, the county tax, the costs, and the total amount due. The court says: In the case at bar, the report gives the total amount of taxes, but does not state what portion is state and what portion is county tax. This is a fatal departure from the law. Here are two sources of taxation, and parties, whose land is sought to be condemned, have a right to be informed which tax it is that is alleged to be unpaid, in order that they may make defense.

In the case before us the report does not even show that the delinquent tax was due, either to the state or county. It simply shows, in the language of the report, "amount of

tax." In proceedings of this character, such an error must be held fatal.

In the case of *Thayer* v. *Stearns et al.*, 1 Pick. 432, which was a case of trespass against the assessors for taking a chaise, etc., the property of the plaintiff, for taxes, Chief Justice Parker, in delivering the opinion of the court, said: There are several points in this case which would require much consideration if it were necessary to give an opinion upon all of them. The objection made by the plaintiff, which we think insuperable, is the blending together the several taxes for state, county, and town.

We think it clear that the legislature intended they should be assessed separately, and put in different lists or assessments. This intention is manifested by the special provision, on account of the comparative smallness of the county tax, that it might be added to the town or state tax. This provision would not have been necessary if they might all have been assessed together, and it is never lawful, in the construction of statutes, to impute useless or frivolous conduct to the legislature. Whether there was any sufficient reason, in our opinion, for this separation of the taxes, is of no importance; but the object undoubtedly was to enable the citizen to scrutinize with more facility his taxes, that he might the better exercise his judgment as to their fairness and legality. Cooley, in his new and valuable work on taxation, page 295, says: A very common provision of the statute, where several taxes are to be spread upon the same roll, is, that they shall be kept separate and placed in distinct columns on the roll. This advises the taxpayer of the nature of the several demands that were made upon him, and enables him to pay or tender the amount of any one, the legality of which he concedes, and to decline to pay any other if he considers it unwarranted. Such provision is mandatory, and if not obeyed the taxes can not be enforced. A custom to blend them can not make the roll valid. But separating the taxes, when the statute does not require it, will not affect the roll, as this deprives no one of any right whatever.

But it is insisted by the appellant that our statutes re-

quiring the several taxes to be kept separate, are directory, and they base this claim on section 39 of the revenue act, which provides that "the acts between the assessment and the commencement of suit shall be deemed directory merely." The determination of this question depends upon the construction to be given to the word assessment, as used in this section. The general rule of construction, as applied to statutes relating to the assessment and collection of taxes, is that what the law requires to be done for the benefit or protection of the taxpayer is mandatory, and can not be considered directory merely. That all those things which were intended to inform the taxpayer for what real and personal property he is taxed, and the character and amount of the several taxes demanded of him, are conditions precedent, and if they are not closely observed, he is not legally taxed, and may resist the collection. This is the reasonable and just rule; and before the courts can abrogate it and give such interpretation to the statute as would be against reason and contrary to justice, it must unequivocally appear that the legislature has, intentionally, prescribed a different one.

The words "assessment" and "assessed" in the revenue act are sometimes used in a limited, strict sense, as reaching and extending only to the act of estimating the values which are to form the foundation or basis of taxation; they are also used in the general and more extended sense as implying the completed tax list, that is to say, the names and list of the persons to be taxed, with the valuations of their property, and the taxes set down under the several headings, and properly extended and carried out. The word assessed is used in the latter sense in the complaint in this case in alleging that the taxes sought to be recovered were "duly levied and assessed" upon the property described; and such, we hold, is the meaning and construction to be applied to the word assessment, as used in section 39 of the revenue act. It follows that the district court did not commit any error in deciding that the taxes were invalid.

But it is claimed by the appellant that the defects in the assessment have been cured by the late act of the legisla-

ture, and that this court must be governed in its decision by the law as it now is. We can not agree with counsel in this respect. This cause is pending in this court upon what is denominated an appeal, which differs from the writ of error only in the mode of bringing the case up for review, and in the form of proceeding. The principles governing the decision are the same as upon writ of error, and the questions to be decided are: Does the record disclose error? Was there error in the judgment of the court below at the time it was rendered? The case of *Barnet* v. *Barnet*, 15 Serg. & R. 72, is directly in point on this question. In delivering the opinion of the court in that case, Tilghman, C. J., said: "Since the judgment in this case in the court of common pleas, an act of assembly has been passed for curing defects in the acknowledgment of deeds by married women. Had this act been passed before the judgment below, it would have cured the defect above mentioned in the demandant's acknowledgment, and there would have been error, in the court's opinion. It is our unanimous opinion that there is nothing unconstitutional in the act of assembly; but it is also our unanimous opinion that it does not extend by retrospect to render a judgment erroneous, which was entered before its passage."

The question now to be decided is whether there was error in the judgment below at the time it was rendered. And we are of the opinion there was not.

It is the first principle in legislation that all laws are to commence *in futuro*, and nothing but the most unequivocal expression can justify a retrospective operation. There is nothing in the act in question which shows an intention on the part of the legislature that it should be applicable to this case. It is not to be presumed that, by its mere act, the legislature intended to confer upon the appellate court power to determine the appeal, not by the pre-existing rules of law which fixed and controlled the rights of the parties, under which the defendant elected whether he would incur the costs of a defense, but by a law empowering the court to do what could not be done before. If such intention was manifest from the act, we should be obliged to decide, both

upon principle and authority, that it was not within the legitimate power of the legislature to extend the act, by retrospect, to render the judgment erroneous which was entered before its passage, and thus deprive the defendant of a vested right to his judgment, subject to be reversed only for error of the district court. Let us illustrate this by some of the judicial decisions. In *Couch* v. *Jeffries*, 4 Burr. 2460, which was an action for a penalty, and a verdict obtained by the plaintiff, motion to stay judgment on the ground of payment of the duties having been made into the stamp office before September 1, 1769, under an act of parliament which says: If the duties before neglected to be paid shall be paid in, on or before the first of September, 1769, the person who has incurred the penalties shall be discharged of and from the said penalties. The question was whether the act related to actions brought before. It was decided by the court that it did not, and it was said by Lord Mansfield: " Here is a right vested, and it is not to be imagined that the legislature could, by general words, mean to take it away from the person in whom it was vested, and who had been at costs in presenting it. They certainly mean future actions. It never can be the true construction of this act to take away a vested right and punish the in- nocent pursuer of it with costs."

In *Dart* v. *Van Sleek*, 7 Johns. 501, Chief Justice Kent observes: As this act was passed, not only after the escape, but after suit brought, it can apply to and govern the case in but one of two ways: it must be considered either as creating a new rule for the government of the past case, or as declaring the interpretation of the former statutes for the direction of the court. I should be unwilling to consider any act so intended, unless that intention was made manifest by express words, because it would be a violation of fundamental principles, which is never to be presumed. The very essence of a new law is that it is a rule for future cases. The construction contended for would make the statute operate unjustly. It would make it defeat a suit already commenced or a right already vested. It would be

punishing an innocent party with costs as well as divesting him of a right previously acquired under existing laws.

The importance to the public of the questions involved in this case, and others depending on its decision, will afford me an excuse and justification for the length of this opinion. I consider it my duty to give the subject full investigation; to state the ground of that opinion as well as the reasons and authority upon which it is founded.

Section 41 of the revenue law provides that in suits for taxes, in case judgment is rendered for the defendant, it shall be general, without costs. The court below erred in awarding defendant his costs.

The judgment of the district court is affirmed, except as to costs, and said court is directed to modify its judgment by annulling and striking out so much thereof as awards costs to the defendant. The order denying a new trial is affirmed.

Whereas, the appellant was obliged to appeal in order to be relieved of the costs adjudged against it in the district court, it is adjudged that the respondent pay the costs of appeal and of this court.