[No. 1613.]

THE STATE OF NEVADA, RESPONDENT, *v.* THE NEVADA CENTRAL RAILROAD COMPANY, ET AL., APPELLANTS.

TAXATION—DELINQUENT LIST—EVIDENCE—CERTIFICATE—EXCEPTIONS — MATERIALITY—ASSESSMENT—RATE. 1. Where, in an action to recover delinquent taxes, the original list, which, by Comp. Laws, 1106, the tax receiver is required to file in the office of the auditor, is offered in evidence, such list, being *prima facie* evidence by Section 1118, is admissible without the certificate of the auditor which is required when a copy is issued.

2.  Under Comp. Laws, 1118, the delinquent tax list filed with the auditor is *prima facie* evidence to prove the assessment, property assessed, the delinquency, the amount of taxes due, and that all the forms of law have been duly complied with. In an action to collect delinquent taxes, the defendant excepted to the admission of the delinquent list in evidence on the ground that it did not comply with the form of the assessment roll prescribed by Section 1093, and that the rate of taxation was higher than allowed by law, but made no attempt to impeach the list by evidence. Section 3285 provides that no exception shall be regarded on appeal unless it be material and affect the substantial right of the parties: *Held,* that the *prima facie* case made by the list not having been impaired by evidence, the exception will be disregarded.

3.  Where the admitted net profits of a railroad were $8,500, an assessment of the road for taxation at $175,000 was justified by evidence that the current rate of interest for loans of large amounts was from 4 to 6 per cent.

### ON PETITION FOR REHEARING.

TAXATION—DELINQUENT LIST—AUTHORITY OF BOARD—BURDEN OF PROOF. 1.
   Where in an action to collect delinquent taxes, the state has put in
   evidence the delinquent tax list, which by statute is made *prima facie*
   evidence of the assessment, it need not prove that the board of county
   commissioners had authority to levy the tax, or introduce evidence of
   such levy; it being incumbent on the defendant, in order to success-
   fully attack the levy, to introduce the proceedings of the board making
   it, and specifically point out its illegal features and fatal defects.

ACTION by The State of Nevada against the Nevada Central
Railroad Company and others to recover taxes. From a
judgment for plaintiff, defendant appeals.   **Affirmed.**

The facts sufficiently appear in the opinion.

*Trenmor Coffin*, for Appellant:

I.   The district court erred in admitting the so-called
delinquent list in evidence to make a *prima facie* case against
the objections of defendants.   The book offered in evidence
was not the delinquent list which the statute makes *prima
facie* evidence. (Comp. Laws, 1117–18; *People* v. *Reynolds*, 28
Cal. 113–14.)

II.   The making up of an assessment roll as required by
law is a part of the assessment; and the necessary founda-
tion of all subsequent acts and proceedings.   (Welty on
Assessments, sec. 223, pp. 374–5; *People* v. *Moore*, 1 Idaho,
666–70; *Oregon Bank* v. *Jordon*, 17 Pac. Rep. 622–3; *Farm-
ers' Bank* v. *Board*, 97 Cal. 325.)

III.   "Our statute does not require a separate assessment
or valuation of lands and improvements, where both belong
to the same owner, but on the contrary expressly directs that
both be valued together."   (Comp. Laws, 1093; *State* v. *C. P.
R. R.*, 10 Nev. 48, 59–60.)   All the authorities which we have
been able to find upon this subject hold such irregularities
fatal and to render an assessment void.   The provisions of
our former revenue act:   "That the acts herein required
between the assessment and the commencement of suit shall
be deemed directory merely, and no other answer shall be
permitted," were repeated in 1895.   (Comp. Laws, 1124;
Gen. Stats. 1108; Stats. 1895, p. 39.)

IV.   The proceedings to be valid from the levy to the
collection of the tax must be *strictissimi juris*.   (*Whitney* v.

*Thomas,* 23 N. Y. 266; Cooley on Taxation, p. 353; *Kelsey* v. *Abbott,* 18 Cal. 618–19; *People* v. *Mahoney,* 55 Cal. 288; *Lake County* v. *S. B. Q. M. Co.,* 66 Cal. 20; *Emeric* v. *Alvarda,* 90 Cal. 446, 465.)

V. There were no liabilities in Lander county for the year 1900 contracted prior to January 1st of that year, which would authorize the levy for county purposes of more than $1.50 per one hundred dollars' valuation. A levy and assessment of taxes at a higher rate than is allowed by law renders the whole assessment void. (*City of Antonia* v. *Raley,* 32 S. W. (Tex.) 180, 183; *State* v. *Union Trust Co.,* 68 Mo. 463; *State* v. *St. Louis Ry. Co.,* 71 Mo. 88; *Kemper* v. *McClelland,* 19 Ohio, 308, 327; *Morris* v. *Davis,* 75 Ga. 169, 174; *Huse* v. *Morrison,* 2 Greenl. (2 Me.) 375; *Stetson* v. *Kempton,* 13 Mass. 272; *Libby* v. *Burnham,* 15 Mass. 144; *Jayner* v. *School Dist.,* 57 Mass. (3 Cush.) 567; *Clark* v. *Strickland,* 2 Curt. 439; Black on Tax Titles, 5th ed., sec. 312–315; Desty on Taxation, 487; Cooley on Taxation, 2d ed. 429.)

VI. The evidence shows without an attempt at contradiction that the value of the main and side tracks, as given by defendant's general manager, was somewhat greater than the material could be sold for in the market. "If the road does not pay current expenses, and cannot be expected to do so, then it is worth no more than the value of its movable material less the cost of taking up and getting it to market." (*State* v. *C. P. R. R. Co.,* 10 Nev. 74; *State* v. *V. & T. R. R. Co.,* 23 Nev. 283; 23 Nev. 432; 24 Nev. 53.)

*William Woodburn,* Attorney-General, *A. J. Maestretti, J. B. Egan,* and *Henry Mayenbaum,* for Respondent:

I. In *State of Nevada* v. *V. & T. R. R. Co.,* 24 Nev. 87, this court says: "That all questions of fact relative to the economical management of the road for the purpose of determining the net income of the road, and all questions relative to the rate of interest as a basis of capitalization are questions of fact to be determined by the jury."

II. "The specification of errors contained in the statement on motion for new trial is that they are pointed out and designated in the foregoing transcript by exceptions Nos. 1, 2, 3, etc., and that the court erred in its rulings, is not suf-

ficient specification," citing Code Civ. Proc. 659, subdv. 3, which is the same as our statute; Comp. Laws, 3292, as above cited. (*Corbett* v. *Job*, 5 Nev. 205; *Sherman* v. *Shaw*, 9 Nev. 149; *Dale* v. *Purvis*, 78 ·Cal. 113.)

III. If there is any fault as to officers' certificates, or as to anything else, in the delinquent list, the. defendants cured it by their introduction in evidence of the assessment roll. (*State* v. *Sadler*, 21 Nev. 18.)

IV. No irregularity in the assessment roll can vitiate the assessment roll unless the taxpayer is injured thereby, however much the assessor may be liable to the state for not following the statute strictly. (Comp. Laws, 3166, 3285; *State* v. *C. P. R. R.*, 10 Nev. 48; *State* v. *W. U. Tel. Co.*, 4 Nev. 338, 347; *State* v. *Sadler*, 21 Nev. 13; *State* v. *Eureka Con.*, 8 Nev. 29; *State* v. *Manhattan*, 4 Nev. 318; Desty, Taxation, sec. 115, vol. 2, 612–616; *State* v. *Northern Belle*, 15 Nev. 386.)

V. "An accurate and pertinent description is only necessary, so far as the owner is concerned, in order to enable him to ascertain from the assessment roll itself, that the tax against him has been assessed on his land and not upon that of another." (*State* v. *Sadler*, 21 Nev. 14; *State* v. *Eureka Con.*, 8 Nev. 29; *State* v. *Manhattan*, 4 Nev. 325.) In *State* v. *Sadler*, 21 Nev. 17, this court says: "Any irregularity in this respect is a defense in an action to recover taxes, only to the extent that the party has been injured thereby. (*State* v. *C. P. R. R.*, 10 Nev. 61; *State* v. *Northern Belle*, 15 Nev. 386.)

VI. Desty on Taxation, p. 454, says: "Giving an erroneous description of lands to the assessor estops the owner from complaining of it. When a taxpayer puts several pieces of land into his assessment list as one with a valuation as a whole, he cannot complain if the tax roll follows his list." (Desty, Taxation, p. 484; *San Francisco* v. *Flood*, 64 Cal. 584; *Lake Co.* v. *Sulphur Bank*, 68 Cal. 14; *Ward* v. *Board*, 12 Mont. 23.) In *State* v. *Manhattan*, 4 Nev. 325, the court says: "When the owner returns lists of his property, it in a manner makes him a party to the listing and assessment." (Desty, Taxation, sec. 615.)

VII. In *San Francisco* v. *Flood*, 64 Cal. 504, the court says: "It is the duty of the taxpayer to furnish a sworn list

of his property to the assessor; if he fails to do so and any loss results to him, he is entitled to no protection from the courts." (*State* v. *Washoe*, 5 Nev. 317; *State* v. *Washoe*, 7 Nev. 83.)

VIII. Special verdict must find all the facts essential to a recovery. Thompson on New Trial, vol. 2, sec. 2651, says: "It is a rule that a special verdict must state all the facts essential to a recovery, and that nothing can be supplied by intendment," citing a great many authorities. Of course, if sufficient questions are submitted to embrace all the issues, that would be equivalent to a general verdict. But if the special question submitted does not embrace all the issues, it must be upon condition that the jury find a general verdict. (Thompson, Trial, secs. 2676, 2677, 2650, and authorities cited.) Questions to the jury may be allowed with a general verdict only. (*Louisville R. R.* v. *Balch*, 105 Ind. 93.)

IX. "To justify the court in rendering a judgment for the plaintiff on a special verdict, the verdict must exhibit all the facts which it was necessary for the plaintiff to prove in order to recover." (*Godsby* v. *Robertson*, 1 Blakf. Ind. 247; *Houseworth* v. *Bloomhuff*, 54 Ind. 487; *Tillsburgh R. Co.* v. *Spencer*, 98 Ind. 186; *Hazard Powder* v. *Viergutz*, 6 Kan. 471; *Smith* v. *Warren*, 60 Tex. 462; *Ross* v. *U. S.*, 12 Ct. of Cl. 565; *First Nat. Bk.* v. *Peck*, 8 Kan. 660; *Glants* v. *South Bend*, 106 Ind. 305; *Buntin* v. *Ross*, 16 Ind. 209; *Morrow* v. *Comrs.*, 21 Kan. 484, 503.)

X. Instruction for special finding must ask for general verdict. *Louisville R.* v. *Worl*, 107 Ind. 320, says: "The prayer for the submission of interrogatories to the jury is not proper unless the court is also asked to instruct the jury to answer the question, in the event that they render a general verdict." So, in *Killian* v. *Egen*, 57 Ind. 480. And so, in *Killian* v. *Eigenmann*, 57 Ind. 480: "The instruction must say: If they find a general verdict they may answer the special question." And in *Taylor* v. *Turk*, 91 Ind. 252: "If the request for instruction to find specially on a particular question does not say: If they find a general verdict, it is properly refused." Our statute, Comp. Laws, 3272, is *verbatim* the statute of California (Code Civ. Proc., sec. 625), and this is the same as the old practice act of California, sec.

175, from which our practice act was originally taken.  (*State v. Robey*, 8 Nev. 312.)

## ON PETITION FOR REHEARING.

*Trenmor Coffin*, for Petitioner:

I.  So far I have been able to discover, after a somewhat diligent search, the authorities are uniform in holding that an excessive levy, such as appears upon the face of the pleadings and proof in this case, renders the entire assessment void.  A levy and assessment of taxes at a higher rate than is allowed by law, or an assessment by an assessor at a rate higher than that fixed by the board of county commissioners or other tax levying authority, renders the whole assessment void.  (*City of Antonio* v. *Raley*, 32 S. W. (Tex.) 180, 183; *State* v. *Union Trust Co.*, 68 Mo. 463; *State* v. *St. Louis Ry. Co.*, 71 Mo. 88; *Kemper* v. *McClelland*, 19 Ohio, 308, 327; *Morris* v. *Davis*, 75 Ga. 169, 174; *Huse* v. *Morrisio*, 2 Greenl. (2 Me.) 375; *Stetson* v. *Kempton*, 13 Mass. 272; *Libby* v. *Burnham*, 15 Mass. 144; *Jayner* v. *School Dist.*, 57 Mass. (3 Cush.) 567; *Clark* v. *Strickland*, 2 Curt. 439; Black on Tax Titles, 5th ed. secs. 312, 315; Desty on Taxation, 487; Cooley on Taxation, 2d ed. 429.)

II.  The proof is, without attempt at contradiction, that during the twelve years next preceding the year 1900 the gross receipts of the railroad company were insufficient to pay the operating expenses of the road, including taxes.  There has been a loss in operating the road in every year since 1888 except in two separate years, and in these years quartz mills were building and made more freight and business than usual for the road, but no other such improvements are in view or in prospect in the region served by that road, nor any improvement in business in prospect.  In the case of *State* v. *C. P. R. R. Co.*, 10 Nev. 47, this whole matter was very thoroughly considered by as able a bench as it has ever been the good fortune of this state to have.  From the opinion of Beatty, J., we make the following short extract:  "To determine the value of a railroad, then, the very first inquiry is as to its actual cost.  That, *prima facie*, is its value.  But if it appears that the actual cost was in excess of the necessary cost, the necessary cost is its proper standard.  If it further

appears that the net income of the road does not amount to current rates of interest on its necessary cost, and is not likely to do so, or if the business of the road is likely to be destroyed or impaired by competition or other cause, or, in short, if the utility of the road is not equal to its cost, then its value is less than its cost, and must be determined by reference to its utility alone." It also appears in the evidence, without contradiction, that the value of the defendants' railroad, under the above rule laid down by this court, was not to exceed $715 per mile, whereas it was assessed at $1,580 per mile.

III.  I submit that the only true basis upon which the value of the Nevada Central Railroad can be estimated, under the evidence in this case, is that laid down in *State* v. *C. P. R. R. Co.*, 10 Nev. 74, which "is the value of its movable material, less the cost of taking it up and getting it to market." The above case has been reaffirmed and followed in *State* v. *V. & T. R. R. Co.*, 23 Nev. 295.

IV.  No reason is given why $4\frac{9}{10}$ per cent was assumed as a basis for capitalizing the value of the road upon its earnings.  It is true that the testimony showed that the rate of interest in New York was from 4 to 6 per cent per annum. The uncontradicted testimony of J. A. Miller, a banker of Austin, was that the rate of interest in Lander county varied from 6 to 18 per cent per annum. It is also true that the owners of the Nevada Central Railroad have ascertained to their sorrow that large sums of money, such as the assessment in this case, cannot be successfully placed in Lander county.  However, the road assessed is in fact in Lander county.  It is local to that county.  It must do its business and derive its income under the local conditions prevailing there.  It must suffer its annual deficits and pay its taxes under these local conditions.  Why should it not also have the benefit of the local rate of interest in determining its value by capitalization?  It seems scarcely fair or reasonable that defendant must be required to exist and continue in business and sustain and bear its losses and pay its taxes under the lean and hungry local conditions of Lander county, and at the same time be valued for the purposes of assessment and taxation upon the basis of the prosperous conditions of New

York. Doubtless $4\frac{9}{10}$ per cent would be a fair basis upon which to capitalize and value and assess a New York railroad. The Virginia and Truckee Railroad runs through three counties—Washoe, Ormsby, and Storey—and has through connections with other lines of railroad. It cost $3,780,000. It would cost $1,500,000 to build it now. In 1895 it was earning a net profit of about $27,000 per annum. In capitalizing and ascertaining its value for the purpose of taxation in Washoe county in 1895, the local rate of interest in Washoe county—8 per cent—was used by this court. (*State* v. *V. & T. R. R. Co.*, 23 Nev. 297, 299.) The same rate was used as to Storey county. (*State* v. *V. & T. R. R. Co.*, 23 Nev. 436.) It is not apparent why the defendant in this case should not have the benefit of at least the lowest local rate of interest in Lander county—6 per cent per annum—in capitalizing and determining its value for the purpose of assessment and taxation.

By the Court, BELKNAP, J.:

This is an action for taxes assessed against defendant for the year 1900. Plaintiff recovered judgment for the full amount claimed, together with penalties, etc. Defendant appeals.

Error is assigned upon the introduction in evidence of the delinquent list, upon the ground that it was not certified to by the auditor.

Section 1106, Comp. Laws, provides: "On the first Monday in December the ex officio tax receiver, at the close of his official business on that day, shall enter upon the assessment roll a statement that he has made a levy upon all the property therein assessed, the taxes upon which have not been paid, and shall immediately ascertain the total amount of taxes then delinquent, and file in the office of the auditor the list of all persons and property then owing taxes, verified by the oath of himself or deputy, which shall be completed by the second Monday in December, and shall be known as the delinquent list.    *    *    *"

By Section 1118 the delinquent list is made *prima facie* evidence in any court to prove the assessment, property assessed, the delinquency, the amount of taxes due and

unpaid, and that all the forms of law in relation to the assessment and levy of such taxes have been complied with.

This was the mode of proof adopted in this case, and was in strict conformity with the provisions of Section 1106 and Section 1118, Comp. Laws, and did not require certification by the auditor.

Under the provisions of Section 1118, a copy of the delinquent list may be used for the same purpose, and in that case the statute provides that the auditor, in whose custody the original is, may certify to the copy.

In connection with this assignment it was urged that the delinquent list does not comply with the requirements of Section 1093 of the revenue law, in that it does not follow the form prescribed by the statute for the assessment roll in numerous particulars, and that the rate of taxation was higher than allowed by law.

All these matters were *prima facie* established by the delinquent list, and no attempt in evidence made to impeach it, nor to show that any substantial right of defendant was affected by the failure of the officers to follow the statutory form.

Section 3285, Comp. Laws, provides that no exception shall be regarded upon motion for new trial or on an appeal unless the exception be material and affect the substantial rights of the parties.

In *People* v. *Moore*, 1 Idaho, 662, relied upon by appellant, the assessment was made under a statute authorizing the officer, when the taxpayer does not own sufficient real estate within the county to secure the payment of the tax, to seize and sell sufficient of the assessed property to satisfy the taxes and costs.

In cases of this nature, where the remedy is special and summary, statutes are strictly construed; and the owner has a right to insist upon a strict performance of all the material requirements of the statute, and especially those which are designed for his security, and the non-performance of which may operate to his prejudice.   (21 Enc. Pl. & Prac. 394.)

"When process is extraordinary and in derogation of the common law, the steps leading to it must all have been taken; and, if it issued under any other circumstances than those

under which the statute gives it to the officer issuing it, he will be a trespasser." (Desty, Taxn., p. 762, *et seq.*)

"A remedy is provided by statute for the enforcement of the tax by distress, and sale of goods of the taxpayer; and the rule of the common law is that, when a statute creates a right and provides a particular remedy, it is exclusive of all common-law remedies. But this doctrine only applies to those to whom the statute is a rule of action." (Burroughs, Taxn., 253; *State* v. *W. U. Tel. Co.*, 4 Nev. 347.)

Touching the business of the road for the purpose of determining its value, the testimony upon the part of the state tended to show a profit of $17,090. It is claimed that this amount should be reduced by miscellaneous account, $2,827.29; overcharges, $2,512.15; and taxes, $3,237.85; aggregating the sum of $8,577.29. Admitting this contention in its entirety for the purposes of the case, there would still remain sufficient evidence of valuation to support the judgment.

This conclusion is reached in this way: The testimony concerning the current rate of interest varied from 4 per cent per annum to 18 per cent per annum. Mr. Stokes, the president of the defendant corporation, testified that the rate of interest in New York was from 4 to 6 per cent; and other witnesses testified that large sums of money, such as the assessment in this case, could not be successfully placed in the State of Nevada, but such loans could be made only in the money centers of the country. Defendant's property was assessed for the sum of $174,663. The profit of the road, after making these deductions, amounts to the sum of $8,512.71. This sum, capitalized at the rate of $4\frac{9}{10}$ per cent, approximates, for all practical purposes, the amount of the assessment.

The judgment and order denying a motion for new trial are affirmed.

ON PETITION FOR REHEARING.

By the Court, BELKNAP, J.:

Counsel claim that the delinquent list showed upon its face an exhorbitant and unlawful rate of taxation.

The complaint alleged the levy of a tax of $2.65, in addition to the state's levy of $1, upon each $100 value of property

within the county, and, as special taxes, the levy of 50 cents upon each $100 value of property within the town of Austin, for town purposes, and the levy of 10 cents upon each $100 value of property within the county for the county road fund. The whole amount of the levy was $6,554.25, of which $4,982.08 was county and special taxes, and $1,572.17 state tax.

The statute provides that the delinquent list shall be *prima facie* evidence to prove the assessment, property assessed, the delinquency, the amount of taxes due and unpaid, and that all the forms of law in relation to that assessment and levy of such taxes have been complied with. The state availed itself of this evidence. As the case then stood, it was not incumbent upon it to prove that an indebtedness not bonded or funded, and contracted prior to January 1st preceding the levy, existed, authorizing the board of county commissioners to levy a tax for county purposes up to the limit of $2, nor to introduce evidence of that levy, or the levy of other taxes authorized to be levied by boards of county commissioners, and going to make the sum total of the levy in this case. The delinquent list did all that for it. To successfully attack the levy, defendant should have introduced the proceedings of the board in making it, and specifically pointed out its illegal features and fatal defects.

The question of the economical management of the road was submitted to the jury under instructions that are not questioned. In determining the value of defendant's taxable property, appellant claimed that items aggregating $8,577.29 should have been deducted from the profits. We conceded the claim for the purposes of the case, and it was shown that a profitable business remained, subject to taxation. But it was never admitted as a fact that this sum should have been deducted from the profits. From $17,090 profits, $6,554.25 should be deducted for taxes for the year, leaving $10,535.75 as net income. This sum should pay nearly 6 per cent per annum upon the assessed value of the property.

Rehearing denied.