WILLIAM TOUSLEY ET AL. *v.* REUBEN TOUSLEY ET AL.

Clerical inaccuracies in the description of a debt, will not affect the lien of a mortgage as against the mortgagor or subsequent judgment creditors of his, provided the debt is clearly identified as the one intended to be secured.

Under the recording acts in force in this State, a mortgage takes effect upon its delivery to the recorder for record ; before that time, it has no effect as against the judgment creditors of the mortgagor ; but after it is so delivered, whether correctly recorded or not, the lien of such judgments attaches only to the equity of redemption, and the judgment creditor stands in no better position than the mortgagor.

A judgment creditor is not a purchaser, nor entitled to the privileges of that position.

IN Chancery. Reserved in the District Court of Logan county.

The material facts in this case are as follows:

On the 9th day of September, 1850, Reuben Tousley executed, and soon after delivered to the complainants, William Tousley and John F. Heazlit, a mortgage on lot number one, in Colvin's addition to the town of Belle Centre, in Logan county, in this State. The condition of defeasance reads as follows:

"The condition of this deed is such, that whereas the said Reuben Tousley has executed and delivered to the said William Tousley two notes, for four hundred and fifty dollars each, and signed jointly by the said Tousley and Abraham Teachout — the first dated Royalton, August 9th, 1845, for four hundred and fifty dollars, payable Feb. 9, 1847, with indorsements thereon; the second note for four hundred and fifty dollars, and dated as above, and payable the 9th day of August, A. D. 1847 : And whereas the said John Fleming Heazlit has jointly bound himself, with the said Reuben Tousley, in a note of four hundred dollars, dated Royalton, August 23d, 1850, and payable to Henry Sheldon & Co., of New York, at the Sandusky City Bank, O., and due December 1st, 1850. Now if the said Reuben Tousley, his heirs, assigns, executors or administrators, shall well and truly pay the aforesaid notes, according to the tenor thereof, unto the said William Tousley and John Fleming Heazlit, their heirs or assigns, then the above deed shall be void, otherwise to remain in full force and virtue."

The certificate of acknowledgment reads as follows :

"The State of Ohio, Cuyahoga county, ss. Royalton, Sept. 9th, 1850. Personally appeared Reuben Tousley, who acknowl edged that he did sign and seal the foregoing instrument, and that the same is his free act and deed. Before me, Joseph Smith, J. P."

The mortgage was received by the recorder of Logan county, for record, Sept. 23d, and recorded Sept. 24, 1850.

There are two certified copies of the record of the mortgage among the files of the case. One of these copies shows that the signature, "Joseph Smith, J. P.," was so recorded; the other copy shows that it was recorded "Joseph Smith, J. W."

The *fac simile* of the letter in question, as recorded, looks more like a W than like a P.

It further appears, that the record of the mortgage was signed by the recorder after the expiration of his term of office.

At the August term, 1851, of the Logan county common pleas, Dennis Perkins & Co., and Robert C. Wetmore & Co., severally obtained judgments against the mortgagor, Reuben Tousley, and,

Tousley et al. *v.* Tousley et al.

in November following, caused executions to be issued and levied on the premises described in the mortgage.

In March, 1852, the complainants filed their bill to foreclose this mortgage, and made these judgment creditors parties.

The notes produced in evidence, as and for the notes described in the mortgage, are copied as follows :

[ B. ]

" $450.00.

" The ninth day of March, 1847, we, or either of us, promise to pay Tousley & Barnum, or order, four hundred and fifty dollars, for value received, with interest after four months.   Royalton, Sept. 9, 1845.

" ABRAHAM TEACHOUT, JR.,
" REUBEN TOUSLEY."

Indorsed on this note are payments made in June and August, 1847, and July, 1849.

[ C. ]

" $450.00.

" The ninth day of September, 1847, we, or either of us, promise to pay Tousley & Barnum, or order, four hundred and fifty dollars, for value received, with interest after four months.   Royalton, Sept. 9, 1845.

" ABRAHAM TEACHOUT, JR.,
" REUBEN TOUSLEY."

[ D. ]

" $400.00.                                        " Royalton, August 23d, '50.

" On the first day of December next, we, or either of us, promise to pay to Henry Sheldon & Co., or order, four hundred dollars, payable at the Sandusky City Bank, for value received.

" JOHN F. HEAZLIT,
" REUBEN TOUSLEY."

The mortgagor makes no defense ; but the judgment creditors claim that the mortgage is invalid as against them, even if it is good between the parties, because :   First, the official character of the magistrate does not appear in the certificate of acknowledgment ; second, the record of the mortgage does not show his official character, even if it appears in the original certificate of acknowledgment ; third, the record of the mortgage was never signed by the recorder ; fourth, the two notes, " B " and " C,"

copied above, are not the notes described in the mortgage, and that the note marked " D " was paid.

It appears that complainant, William Tousley, was the Tousley in the firm of Tousley & Barnum ; and that on the dissolution of that firm, and over a year before the execution of the mortgage, an agreement was made between the members of the firm, by which William Tousley became the owner of the partnership notes and accounts, among which were the two notes marked " B " and " C."

It appears further, that some time before the mortgage was executed, the grantor had agreed with William Tousley to secure the payment of the two notes " B " and " C," by mortgage on the premises described in the mortgage that was executed ; and that, in pursuance of this agreement, the grantor drew the mort gage, and when he came to the condition of defeasance, he sent to William Tousley's residence for the two notes, or copies of them, in order to get a correct description of them ; but William was not at home, and the notes were not obtained ; and the grantor described them, as to date and time of payment, from memory. He knew that they were made payable to Tousley & Barnum, but he described them as having been " executed and delivered to the said William Tousley," because of the dissolution agreement by which the latter became their owner.

The note marked " D " was paid by Heazlit in January, 1852.

*Kernan & Hubbard*, and *Walker & West*, for complainants, made the following points:

1. The official character of the magistrate before whom the mortgage was acknowledged, is sufficiently declared by the letters " J. P.," and the *inveterate practice*, among justices of the peace, of using these letters for that purpose, is entitled to great weight in construing the statute under which the certificate of acknowledgment was made. 3 Ohio Rep. 140 ; 2 Cow. Rep. 567 ; 3 Dana 118, 119 ; 5 Cranch 32 ; 1 Serg. & Rawle 102, 106 ; 1 McLean Rep. 524 ; 4 Wend. Rep. 561, 563 ; 3 A. K. Marsh. 41 ; Phil. on Ev. (Cow. & Hill's notes, 3d ed.) Pt. 2, p. 462.

6

2. The misdescription of the two notes is not so in any thing where description is essential as to these two judgment creditors. These notes would be good if they had no dates. Bailey on Bills 25 ; Chitty on Bills 169 ; 13 East 517 ; Cowen's Rep. 337. A note is good if it specifies no time of payment. Thompson on Bills 32 ; Story on Prom. Notes, sec. 29. Therefore, as date and times of payment are not indispensable requisites, it was not necessary, so far as these judgment creditors are concerned, to notice them in the mortgage at all, and as against these creditors, the misdescription as to dates and times of payment may be rejected as surplusage. These creditors were not *misled* — there was enough upon the record to put them upon inquiry, and that was sufficient. 1 Ohio Rep. 264; 3 Ohio Rep. 60 ; 14 Verm. R. 14 ; 10 Ohio Rep. 84 ; 2 Hilliard on Mort. 164–5, and note.

3. It was no misdescription to describe the notes as payable to William Tousley ; they belonged to him, and the description is according to the *fact* and *legal* effect. See 2 Hilliard on Mort., chap. 40, p. 164.

4. It was not indispensably necessary to describe the notes as bearing interest after four months, and these judgment creditors have no right to raise the objection. 2 Ohio R. 343–4 ; 3 Ohio R. 60. The misdescription of the notes is a mere clerical error.

5. The payment of the Henry Sheldon & Co. note by Heazlit, instead of extinguishing his mortgage lien, made it absolute at law ; because the note is joint and several, and the mortgagor failed to pay the note as he was bound to do by the *condition* of the mortgage. 2 Hilliard on Mort. 164.

6. The record of the mortgage is valid. The law does not require the recorder to sign the record. Swan's Rev. St. 790, sec. 6 ; also p. 314.

7. The lien of the mortgage attached when it was filed for record, and the record was notice to all the world. Swan's St. 311, sec. 13 ; 1 Ohio St. Rep. 116 ; 2 Hilliard on Mort. 165.

*William Lawrence*, for Dennis Perkins & Co., made the following points :

1. The record of the mortgage does not show the official char-

acter of the person before whom it purports to have been acknowledged, and the certificate of acknowledgment is defective. The judgment creditors are only bound by the record *as it is.* Swan's Stat., sec. 7, p. 310 ; *Stansell* v. *Roberts,* 13 Ohio Rep. 148 ; *Jackson* v. *Luce,* 14 Ohio Rep. 514 ; *Holliday* v. *Franklin Bank,* 16 Ohio Rep. 533 ; *Jennings* v. *Wood,* 20 Ohio Rep. 261. Even the letters " J. P." are not sufficient. *Lessee of Johnson* v. *Haines,* 2 Ohio Rep. 55 ; *Smith* v. *Hunt,* 13 Ohio Rep. 260 ; *Brown* v. *Farran,* 3 Ohio Rep. 140.

. 2. The notes are not described correctly in the mortgage — they are not the same notes described in the mortgage, but different in the following particulars : 1. The mortgage describes notes dated *August* 9, 1845 : the notes produced in evidence are dated *September* 9, 1845. 2. One is described as payable Feb. 9, 1847, and one as payable Aug. 9, 1847 ; but the notes produced are payable March 9, 1847, and Sept. 9, 1847. 3. The notes produced bear interest after four months ; the record gives no such description. 4. Two notes described in the mortgage are payable to William Tousley ; those produced are payable to Tousley & Barnum.

3. The Sheldon & Co. note was paid, and its mortgage lien is lost.

4. There is no valid record, because the record was not signed by the recorder.

5. If in equity these errors could be corrected as between the parties, it cannot be done to the prejudice of intervening judgment creditors. *Ohio Life Insurance Co.* v. *Urbana Ins. Co.,* 13 Ohio Rep. 220 ; *White* v. *Denman,* 16 Ohio Rep. 59.

*Stanton & Allison,* for Robert C. Wetmore & Co., made the following points :

1. The instrument claimed to be a mortgage is not such, even between the parties to the instrument, so far, at least, as William Tousley is concerned. 27 Maine Rep. 400, and cited in U. S. Dig., vol. 9, p. 340, sec. 179.

2. The pretended mortgage was not acknowledged before a *proper officer as such.* There is nothing in the body of the cer-

tificate, or annexed to the signature of the person taking it, which shows his official character. The initials "J. P." are not sufficient to show that the acknowledgment was before an *authorized* officer ; this fact should appear in the certificate of the officer himself. *Lessee of Johnson* v. *Haines*, 2 Ohio Rep. 278. The initials " J. P." would stand as well for judge of police or judge of probate as for justice of the peace. See *Lessee of Shulz* v. *Moore*, 1 McLean 527.

3. The pretended mortgage was never legally recorded, the record not having been signed by the recorder.

4. The mortgage did not take effect as against these creditors, from the time of its delivery to the recorder. Such might be the effect whilst it remained in the recorder's office, or during the twenty days given him in which to record it ; but it certainly could not have that effect a year or more after it was taken from the office.

5. The error alluded to, cannot be corrected as against the judgment liens. *White* v. *Denman*, 16 Ohio Rep. 59.

6. But if the original mortgage was good, as recorded it was not sufficient to give defendants constructive notice, (and there is no pretense that they had actual notice even of the record,) because the record shows the initials to be J. W.

7. The error in describing the two notes as executed and delivered to William Tousley by the said Reuben Tousley, is not cured by showing that William was the sole owner of the notes.

RANNEY, J. It is somewhat difficult to discover the "important and difficult questions" which weighed upon the minds of the district court, in ordering this case to be reserved. There seems to be but one which we could justify ourselves in taking any space in the reports to consider, and that chiefly for the purpose of explaining a difference between this case and other decisions of this court, which the learned counsel for the defendants seem to have overlooked. It is true, that the notes intended to be secured by this mortgage are very inaccurately described. If error, instead of accuracy, had been the object of the draftsman, he could hardly have committed more. But still it is very

easy to see how the most material of them occurred, and none of them amount to any thing more than clerical inaccuracies.

That the mortgage was given to secure an honest debt, and that the notes produced are those intended to be described in it, is not denied. We find the mortgage to have been properly executed and recorded long before the judgments were recovered. That these mistakes could be made available to defeat its lien, as between the parties, will hardly be pretended. And if not between the parties, how are the judgment creditors of the mortgagor to stand in any better situation ? Before the recovery of their judgments, the debtor had conveyed the legal title, and had nothing left but an equity of redemption upon which the lien of the judgments could attach. In pursuing this lien, they take his place, stand in his shoes, and can relieve the land from the incumbrance upon no better terms than he could. Indeed, as between these parties, it is wholly immaterial how many mistakes were made in recording the mortgage. The necessity of recording a mortgage, to give it effect as against subsequent incumbrances, arises alone from the statute; and all the decisions that have been made, have involved the construction of the statute. It is unnecessary to refer to them in detail. They simply amount to this : — that, as against third persons afterwards acquiring an interest in, or lien upon the property, a mortgage, until delivered to the recorder for record, is wholly inoperative to convey or incumber the land, either at law or in equity. Some of the earlier cases speak of this delivery to the recorder, as a part of the execution of the instrument; but whether that can be properly said or not, it is certain, that the statute has made it an indispensable condition to the taking effect of the mortgage, as against such third persons. The statute expressly provides when it shall have its full effect against everybody—it " shall take effect and have preference from the time the same is delivered to the recorder of the proper county, to be by him entered on record." When this is done the statute is satisfied, and the land is effectually conveyed and incumbered. All judgment liens thereafter attaching are subject to the mortgage, and operate only upon the equity of redemption.

The distinction between such a case and those in which the judgment lien has been preferred, is most apparent. In those cases, either because the mortgage had not been delivered to the recorder, or because it was defectively executed and not entitled to record, the judgment lien attached *before* it had taken effect as against the creditor; while in this, the judgment was not rendered until *after* the mortgage had taken effect, by a full compliance with the terms of the statute. Very different considerations might be presented in a contest with a subsequent bona fide purchaser, in view of the provisions of the eighth section of the act of 1831. It was in reference to these considerations, that the cases of *Lessee of Jennings* v. *Ward*, 20 O. R. 261, and *Brown* v. *Kirkman*, 1 Ohio St. R. 116, were decided.

In the first of these cases, the recorder had mistaken the name of the grantor, in making the record of the elder deed; and the junior deed had been taken by a bona fide purchaser, without actual notice of the existence of the other. The court held the first deed not duly recorded; and, as a purchaser can only be charged with constructive notice from the record, when the record, if examined, would have furnished actual notice, allowed the title of the subsequent purchaser to prevail. This case was not overruled, as counsel suppose, in deciding *Brown* v. *Kirkman;* nor is the latter in any way, or to any extent, inconsistent with it. That was the case of two mortgages. The elder was properly executed and delivered to the recorder, who made a mistake, in the description of the land, in placing it upon record; but the junior mortgagee *had actual notice* of its existence, independent of the record. The court held, that the lien of the mortgage, under the statute, was perfected by its delivery to the recorder, and that the junior mortgagee, having notice in fact of its existence, did not occupy the position of a subsequent bona fide purchaser. While the record, in both cases, was held to be insufficient to affect a subsequent purchaser with constructive notice, the important difference between them (and one that might furnish something of an excuse for a different decision) was, that in the one case the purchaser had no notice and was

defrauded, and in the other had notice and was *not* defrauded. The one was, therefore, protected, and the other not.

But this question could never arise between a mortgagee and a subsequent judgment creditor, for the plain reason, that such a creditor is not a purchaser, nor entitled to the privileges of that position.

So far as the statute goes, in giving him a preference over mortgages not perfected by a delivery to the recorder, his rights are absolute, but for every thing else, he is remitted to general principles; and upon general principles, it is very clear, that he acquires a lien only upon the interests of his debtor, and is bound to yield to every claim that could be successfully asserted against him.

This mortgage, having taken effect by a delivery to the recorder, and in fact, as we think, having been duly recorded before the recovery of the defendants' judgments, and notwithstanding the errors of description, being a good security against the mortgagor, is, in our opinion, equally available against the judgment creditors.

In respect to other questions presented, it is only necessary to say, that we find nothing in any of them to defeat or postpone the lien of the mortgage.

A decree will be entered giving the mortgage priority, and ordering a sale of the property.