Wright, J.,
dissenting. These facts are undisputed. The auditor did publish two notices. One stated that the sale would take place on the 23d of October. The other, for five successive weeks, announced that it would be on the 25th. The sixth week gave the correct date, of the 23d. It is also undisputed that under the sale had property worth $1,200 was knocked off for $300. Also that plaintiff Sealing, whose land was sold, within three days offered to pay the purchaser his $300, and $25 additional, to recover his land. He also brings into court $90.25, the amount due the state, in default of which the auditor sold. It is also beyond dispute that plaintiff'was in entire ignoi’ance of the proceedings which thus summarily dispossessed him.
Where a man’s property is taken from him without any actual notice to him; where it is ppt up for sale by the county auditor, under laivs that provide no protection of appraisement; where there is no action had in any court, in any jurisdiction; where the result is a sacrifice that offends justice, if there is any law to subvert such proceedings, it is quite proper that it should be discovered. The more especially as such law, when found, can do no one any harm. If we afford relief, it can not be without refunding the purchaser his money, and paying the State of Ohio her claim, all of which is ready to he done.
The power exercised by the auditor in this case I can not assimilate to anything other than that of tax sales. It may be said that the state is not here, as there, exercising its sovereign power. The state sold the property to this man, and its legislature provides that if he does not pay it shall be put up at public auction after six weeks’ notice, all of *448 which is part of the contract of sale, and agreed to by the purchaser. So it is. But the rule that applies to tax sales, and to all sales under powers other than those of courts of law, is that the proceedings must be strictly regular. Childs v. Childs, 10 Ohio St. 342. Referring to tax sales, our Su-; preme Court has said, that they “ are attended with greater sacrifice to the owners of land than any others. Purchasers seem to have but little conscience. They calculate upon obtaining acres for cents, and it stands them in hand to see that the proceedings have been strictly regular.” Hughey v. Horrell, 2 Ohio, 231.
It appears to me that the relief should be granted, upon-the ground that the notice in question was irregular and insufficient.
Eirst, the notice is a jurisdictional fact. It is under this,, and this alone, that the auditor obtains any power whatever to sell. If this jurisdictional fact falls, the power goes with it. The notice must be shown to be regular. Nothing-whatever is presumed in its behalf. Do the facts show notice, in any fair sense of the word ? It is perfectly true-that one of the advertisements was correct in point of date. But the other was incorrect. Both were the official acts of the auditor. I can, not see the propriety of saying that one of the publications was right, and hence the auditor.iad power to sell, while shutting our eyes to the fact that there was another notice, importing as much verity, which was wrong. Bet us test it. by ascertaining the object of notice. It is to let the owner of the laud know, and to let the public know, the precise day when the sale is to take-place. There should be no uncertainty about the information conveyed. If there is any object which the law seeks-to attain, it is that -this information should be exact, that the day of sale should be made known beyond any possible manner of doubt. Is this done when the auditor says in one paper the sale is to be on one day, and in another that it is to be on a different day? The object is to name a date-in such a way as that none can mistake. This is not done-by a mistake itself.
*449 If the case were supposable, let us imagine a law providing that the auditor, instead of resorting to the newspapers,, should give notice proclaiming by word of mouth the day of sale from the court-house door. Be it further imagined, that in discharge of this duty he did announce twelve times in. alternate succession, seven times that the sale would be on the 23d, five times on the 25th. "Would those who listened to this astounding performance obtain anything but perplexity ? Would any one maintain that such a proceeding was legal ? Yet that is precisely what was done in this case. Could it be said that the law provided crying the> proper day six times, and that had been done ? That which is proper is so linked with that which is confessedly improper, that I am unable to dissever the two, and both-should fall. Not that one was not right, but because of the-evils of bad company.
This man had the right to go to the auditor upon the very day of sale and redeem his land. Says the Supreme Court of the United States : “ He may arrest the uplifted' hammer of the auctioneer, when the cry for sale is made.” Early v. Doe, 16 How. 610. Suppose he intended to exercise this right. He gets hold of the wrong notice, and is-told he has until the 25th. Upon that day he goes to the auditor, money in hand, and finds his property sold two-days before. The auditor shows him -the Perrysburg Journal, with thé advertisement for sale on the 23d, and this he declares to be the record, which can not.be impeached. Sealing, in reply, shows the Wood County Sentinel, with the-advertisement for the 25th, and insists upon its verity. He has just as much right to do so as the auditor has, for he-has reposed his faith upon the auditor’s name and act. Whatever the right or the wrong of it may be, two things-are certain: The man’s property has been sacrificed; by a mistake of the man who sacrificed it. By an officer of the-state, whose first and sworn duty it was to see that there-should be no mistake. Property is taken from an owner,, without his knowledge, against his consent, he has com-. *450 mitted no .wrong, and been in no default in the exercise of his undoubted right to redeem.
That the notice in this case is in the nature of a jurisdiccional fact, without which the auditor had no power whatever, is' shown in cases other than that of tax sales. In the matter of assessments for locating and constructing ditches. Sessions v. Crunkillin, 20 Ohio St. 360, per McIlvaine, J., “ The filing of a bond with the petition, and the finding by "the trustees that the bond has been filed and notice given ¡as required by' the statute, are conditions essential and precedent to the right of the trustees to hear and determine the petition. The right to hear and determine a cause is jurisdictional; and under this statute no jurisdictional power wests in the trustees to locate and establish a ditch until the concurrence and performance of these conditions has taken place.” v
So in city assessments, Welker v. Potter, 18 Ohio St. 85.
Notice, then, being a jurisdictional fact, I hold is not in this ease established by two advertisements, one of which is right and the other wrong.
Under our registration laws it is well settled that a party •can only be charged with constructive notice when the record would give him actual notice. Jennings v. Wood, 20 Ohio, 261; Brown v. Kirkman, 1 Ohio St. 116; Tousley v. Tousley, 5 Ohio St. 78.
If any record of proceedings of the auditor in sale of ¡school lands were required, and the auditor had recorded both the advertisements, the wrong as well as the right one, would such a record convey notice to any one perusing it ? If he made a record at all, it should be a record of all his acts. Not such’ as he deems right, excluding those he thinks wrong. Courts may have a word to say as to what was right and what, was wrong. It appears to me that no court would hesitate to set aside, on motion, a sheriff’s ••sale, made under such circumstances ? Now records are •for the purpose of giving notice after the fact, publication ■for giving notice before. Therefore, the acts of the audifor before the sale should be governed by the same princi *451 •pie that would apply to his record after it. And if the owner, or one desiring to purchase the land, upon a rigorous scrutiny of these two conflicting and contradictory advertisements, would be unable to determine the day of sale, without further inquiry elsewhere, I claim that proper no-dice has not been given.
There is another view in which the relief asked should "be granted: that is, on the ground of constructive fraud. It will not be disputed, that if the auditor acted fraudulently, his proceedings could be set aside. Blackwell Tax Titles, 396; Dudly v. Little, 2 Ohio, 504; Slater v. Maxwell, 6 Wall. 269.
If the auditor had purposely published this wrong notice, with the intent to mislead plaintiff:' and sacrifice his property, as a piece of spite work, courts would not be slow “to interfere. The result has been accomplish edj and it works the injury whatever the motive may have been. It does not help the matter, that the auditor, instead of being' knavish, has only blundered.
. It is plain that this wrong notice may have wrongfully, .and therefore fraudulently, affected this plaintiff. It is his right that the public should be correctly, informed, that they may attend and bid at the sale, and so enable his land to bring something like its value.
Eor five consecutive weeks this wrong advertisement was paraded before the people of Wood county, over the auditor’s signature. Half of the population may have read it, and so gone to the sale upon the wrong day. Suppose the auditor had adopted any other method of keeping the people away. Has he done his duty in this ? I have, therefore, no hesitation in holding that the mistake of the auditor, in publishing a notice of the wrong day, operated as a constructive fraud upon this owner. That he has been •damaged thereby, and it is therefore our duty to interfere.
This plaintiff appears to have had a difficult time in the endeavor to save his land. It was sold before he knew it, and in the court below no bill of exceptions was taken to show the facts necessary to a reversal. There has, how *452 ever, straggled illegitimately into the transcript, a copy of the publication, which the auditor claims was the correct one, and under which he did sell. I think I may assume to say, that if this publication were upon the record, and so properly' before us, on account of its obvious insufficiency, we would not hesitate to grant the relief asked.
I recognize the fact, that in the present state of the record, we can not look at this advertisement, but it does not dissatisfy me with my present judgment, to know that if we could, we would find the proceedings at this sale as crooked and irregular as manifest error can make them.
Scott, Chief Judge, also dissented.