*John F. Kumler* and *A. L. Smith,* Attorneys for Plaintiffs.

*Doyle & Lewis,* for Defendants.

---

(Cincinnati Sup. Ct., Gen. Term., Nov., 1901.)
    Dempsey, Murphy and Smith, JJ.
    JOHN REGAN v. MARY WALSH.

*Defectively executed mortgage invalid though recorded—*
    (1.) A mortgage defectively executed is not entitled to record, and, if recorded, the unauthorized record will not give it any priority over later liens or purchases, even though the purchaser or mortgagee have actual notice of the former mortgage.

*Omission chargeable to mortgagee, when—*
    (2.) Where the omission in a mortgage, executed when the law required the wife to be examined separate and apart from her husband, to have the certificate of acknowledgment show that fact, was on the part of the notary, the omission is chargeable to the mortgagee, whose duty it was to see that the instrument was validly and perfectly executed.

*Reformation operates from its date—*
    (3.) Where the evidence as to the separate examination of the wife, not appearing in the certificate of acknowledgment, is sufficient to warrant reformation of the instrument, such reformation can only operate from the time of correction against intervening *bona fide* vendee and mortgagee.

*Claim superior to defective mortgage—*
    (4.) Where the owner of the fee, by reason of failure to pay ground rent, is a pre-existing creditor of the owner of the lease, and in addition the owner of the fee assumes and pays delinquent taxes and assessments, there is a sufficient consideration for the surrender of the lease to make the title of the owner of the fee valid as against an existing defective mortgage upon the leasehold, of which the owner of the fee had no actual knowledge.

---

Heard on Error:
Dempsey, J.

John Regan, who was the plaintiff below, brought his action against Mary J. Walsh, seeking to quiet his title to certain real estate in the city of Cincinnati against any claims that said Mary J. Walsh might appear to have or assert under a certain mortgage deed to said Mary J. Walsh, which deed was recorded in the mortgage records of Hamilton county.

The said Mary J. Walsh, by her answer and cross-petition, set up affirmatively her claims under said mortgage deed, and prayed against Regan a foreclosure thereof. By an amendment to her answer and cross-petition, the said Mary J. Walsh prayed for a reformation of said mortgage deed, and then a foreclosure thereof, as prayed in her original answer and cross-petition. Appropriate pleas were filed by Regan to the answer and cross-petition and to the amendment thereto, and a hearing was had upon the issues made, resulting in a finding and judgment by the court at special term in behalf of said Mary J. Walsh. To reverse that judgment this proceeding is prosecuted.

From the bill of exceptions taken at the hearing the following facts appear: On May 12, 1869, one Peter Neff, who at that time was the owner in fee simple of the real estate involved herein, leased the same perpetually to

one Robert J. Malcom, who covenanted for himself and assigns to pay a yearly rent of $75, payable quarterly, $18.75, on the eleventh day of August, November, February and May of each and every year, and also all taxes, levies and assessments whatever upon said premises during said term, whether upon the fee or leasehold. On July 17, 1869, said Malcom, for consideration of $10 to him paid assigned and transferred said leasehold estate to one Catherine Dinsmore, who went into possession thereof. On July 31, 1872, the said Catherine Dinsmore and her husband, since deceased, executed and delivered to Mary Conway their mortgage deed upon said leasehold estate to secure their promissory note in favor of said Mary Conway for the sum of $200, payable in two years from the date of said mortgage. The said Mary Conway is the same person as the said Mary J. Walsh, she having married in the meantime. The original mortgage is lost; a record of it appears on the mortgage records of Hamilton county, in book 335, at page 375. The certificate of acknowledgment, as it appears in said record, fails to show that the officer taking the acknowledgment did examine Mrs. Dinsmore separate and apart from her husband, and did make known to her the contents of such mortgage deed, and that upon such an examination she did declare that she did voluntarily sign, seal and acknowledge the same, and that she is still satisfied therewith. These formalities were required by the law in force at the time this mortgage was executed, in order to give effect to the deeds or mortgages of married women. So far as the record shows, then, this mortgage to Mary Conway was a nullity. There is evidence by Mrs. Walsh, uncontradicted, to the effect that she was in fact taken by the officer into a room apart from her husband and by the notary examined as the law directed; but there is no evidence whatever as to whether the omission, in the recorded certificate, of the steps required to be taken under the law, was due to the neglect or oversight of the notary to make them originally in the mortgage itself, or to the neglect of the recorder in copying the mortgage, assuming them to have been correctly stated by the notary.

Prior to February 6, 1896, Catherine Dinsmore fell into arrears, and became in default for rent, taxes and assessments due and payable under said lease. A suit had been brought against Mrs. Dinsmore and Miss Lucy W. Neff, who, had become the owner of the reversion, to sell the whole property to pay a sewer assessment levied upon it. Miss Neff had filed an answer in this suit setting up the arrearages due to her

on the leasehold. These arrearages were $131.25 rent due and interest thereon, and taxes, street and sewer assessments, $120, making in all $252.13. Mrs. Dinsmore could not pay up these arrearages, and to save costs of sale it was agreed that Mrs. Dinsmore and husband should convey the leasehold estate to Miss Neff, Miss Neff assuming the taxes and assessments. This was done February 6, 1896, and Mrs. Dinsmore surrendered possession. Miss Neff never had any knowledge of the mortgage referred to, either actually or even by derivation from an inspection of the records by her lawyer.

In July, 1900, Miss Neff sold the property in fee simple to Regan, whose attorney, Mr. Hingson, discovered this Conway mortgage and reported it to Mr. Chas. B. Wilby, Miss Neff's attorney. This was the first knowledge that either Mr. Wilby or Miss Neff had of any such incumbrance on the leasehold. Mr. Regan's knowlege was, of course before he accepted title from Miss Neff, and his rights, in consequence, are based upon hers and are no greater than hers. There is an offer in the petition to allow Mrs. Walsh to redeem the leasehold by the payment of all back rents, taxes and assessments, but as they aggregate more than the fair value of the leasehold estate, or of her mortgage, such an offer was not likely to be accepted. The real question is as to Mrs. Walsh's rights under the facts as stated. It must be conceded, so far as the mortgage to Mary Conway was concerned, that under the law as it existed when said mortgage was executed, it was fatally defective in its acknowledgment clause, at least to the extent that it attempted to convey Mrs. Dinsmore's estate in this property. Mr. Dinsmore, being now dead, no question as to his rights is involved in this case.

Since 1838, it has been the unchanged statute law of this state that all mortgages executed as provided by law shall be recorded in the recorder's office of the county in which the mortgaged premises are situated, and shall take effect from the time when the same are delivered to the recorder for record; see section 7; 13 S. & C. 465, 469; section 4133, Revised Statutes. Under these statutory provisions, it has been the uniform holding of our supreme court, in a eeries of cases beginning with *White* v. *Denman,* 16 Ohio, 59, and ending with *Straman* v. *Rechtine,* 58 Ohio St., 443 [51 N. E. Rep., 44], that a mortgage defectively executed is not entitled to record, and, if recorded, the unauthorized record will not give it any priority over later liens or purchases; in other words, the later mortgagee or purchaser takes

title free from the defectively executed mortgage, and this even though such purchaser or mortgagee have actual notice of the former mortgage. (See Bates' Digest, for list of cases, title "Mortgage," subdivision 7, "Record and Priorities.") If the case at bar stood upon the application of this general doctrine of Ohio jurisprudence, the decision thereof would be easy and simple, and Mrs. Walsh would be forever postponed to Miss Neff in the assertion of rights under the mortgage.

Other questions in this case are, however, to be considered. There is a contention that Mrs. Dinsmore was, in fact, examined separate and apart from her husband, and the law complied with as regards her. We have, however, no evidence at all that the acknowledging officer complied with the law in making up his certificate on the mortgage, or if he did so comply, that the omission was in the recording thereof in the recorder's office.

Assuming that the omission was that of the recorder, the evidence is clear that neither Miss Neff nor her counsel, had any actual notice of Mrs. Walsh's mortgage. Under *Jennings* v. *Wood,* 20 Ohio, 261, Miss Neff would be protected in her title. *Jennings* v. *Wood, supra,* was somewhat commented on in *Tousley* v. *Tousley,* 5 Ohio St., 78, and there was also a vigorous dissent in the case, but a careful search has not shown it to be overruled, so that we must accept it as the law. Of course, if the omission was on the part of the notary himself, then the omission was chargeable to Mrs. Walsh herself, for it was her duty to see that she took a validly and perfectly executed instrument.

Assuming, also, that the evidence as to Mrs. Dinsmore's separate examination was convincing enough to warrant the ordering of a reformation, still the rule is settled in Ohio that such reformation can only operate from the time of correction as against an intervening *bona fide* vendee or mortgagee. *Clements* v. *Doerner,* 40 Ohio St., 632; *Straman* v. *Rechtine, supra.* The only remaining question is whether Miss Neff was a *bona fide* purchaser for value.

The fair inference to be drawn from *Tousley* v. *Tousley, supra,* and *Brown* v. *Kirkman,* 1 Ohio St., 116, is that the recording statutes, even as to mortgages, are intended solely for the protection of *bona fide* buyers for value. And it is the same class of buyers that are protected by the rule laid down in *Clements* v. *Doerner* and *Straman* v. *Rechtine, supra.* The evidence is clear that the purchase or release between Mrs. Dinsmore and Miss Neff was a perfectly sincere, honest transaction, and that Miss Neff had no actual notice of Mrs.

Walsh's encumbrance. The quit-claim conveyed the *corpus* of the property sought to be sold. All other essentials being present, such a deed, under *Morris* v. *Daniels,* 35 Ohio St., 406, is sufficient to constitute Miss Neff a *bona fide* purchaser for value.

The open question is as to the consideration paid by Miss Neff for the surrender. The most favorable aspect of the case for Mrs. Walsh, under the evidence, is that Miss Neff was a pre-existing creditor of Mrs. Dinsmore, and that the surrender of the lease was in satisfaction of the debt. On the evidence, the state of the case is stonger than this contention, for, in addition to the ground rents due, there were taxes, street and sewer assessments, the liability for which, as between Miss Neff and Mrs. Dinsmore, was primarily upon Mrs. Dinsmore, Miss Neff assumed and paid these taxes and assessments, and also the costs in the assessment suit, as a part of the consideration for the transfer of the leasehold estate. Under the principles laid down in *Clements* v. *Doerner, supra,* and *Sternberger* v. *Ragland,* 57 Ohio St., 148 [48 N. E. Rep., 811], we think these payments in addition to the release of the rent due constitute Miss Neff a purchaser for value.

On the whole case, therefore, we are of opinion that Miss Neff was entitled to hold this leasehold estate free and clear of any claims of Mrs. Walsh under her mortgage. Whatever rights Miss Neff had, Regan took by his deed, and was entitled to enforce them against Mrs. Walsh. Consequently he was entitled to a decree quieting his title against any claim set up under said mortgage.

The finding and judgment of the court at special term being to the contrary, the same must be reversed, and it is so ordered. As to the form of the judgment in this court, counsel will confer with the court.

*Wilby & Wald,* for Plaintiff in Error.

*Kean & Kean,* for Defendant in Error.

---

*Kean* and *Kean,* for Defendant, cited:

*Kilbourn* v. *Fury,* 26 Ohio St., 153; *Goshorn* v. *Purcell,* 11 Ohio St., 641; *Ludlow* v. *O'Neil,* 29 Ohio St., 181; *Ward* v. *McIntosh* 12 Ohio St., 231; *Carney* v. *Hoppel,* 17 Ohio St., 39; *Hume* v. *Dixon,* 37 Ohio St., 66; *Kilbourn* v. *Fury ,supra; Riley* v. *Rice,* 40 Ohio St., 441; Revised Statutes, 5867 and 5872; *Hout* v. *Hout,* 20 Ohio St., 119; *Warner* v. *Callender,* 20 Ohio St., 190; *Hurlbut* v. *Wade* 40 Ohio St., 603; *Ashley* v. *Rockwell,* 43 Ohio St., 386 [2 N. E. Rep., 437].