## MILLER *v.* SCOTT ET AL.

*Subrogation—Party furnishing money to pay mortgage—Subrogated to lien of canceled mortgage—Priority over judgment rendered after cancellation and before new mortgage executed.*

A advances to the owner of property money with which to pay off and cancel a mortgage thereon, under circumstances which, as between him and such owner, entitle him to have the lien of such mortgage continued in force for his benefit. When said loan was made and said mortgage canceled, B had begun suit against said owner to recover a judgment on a promissory note signed by said owner, and said suit was thereafter prosecuted to judgment, which judgment became a lien on said property after the cancellation of said mortgage and before such owner had executed a new mortgage to A to take the place of said canceled mortgage.

    *Held*: The taking of such judgment did not defeat A's right to be subrogated to the lien of the mortgage which was paid off with his money, and his lien has priority over the lien of said judgment; it appearing that in so holding the burdens of B have not been increased over what they were at the time he brought suit on said note.

(Decided January 31, 1924.)

APPEAL: Court of Appeals for Summit county.

*Mr. J. M. Poulson,* for plaintiff.
*Messrs. Rockwell & Grant,* and *Mr. J. C. Linton,* for defendants.

WASHBURN, J. This case is before this court on appeal from the judgment of the common pleas court. It is an action in equity, by which Clara F. Miller seeks to enforce the lien of a judgment

obtained by her against Glen R. Scott and Hazel M. Scott by the sale of real estate belonging to said Glen R. Scott and Hazel M. Scott.

The controversy is not between said parties, but is between Clara F. Miller, on the one hand, and Catherine and John Blank, on the other, and the solution of the question involved depends upon whether or not Catherine and John Blank are entitled to the aid of the doctrine of subrogation, so as to make their lien upon the real estate of Glen R. and Hazel M. Scott prior to the judgment lien of said Clara F. Miller.

The facts are not in dispute, and, so far as it is necessary to determine the question involved, they are as follows:

Prior to the year 1922, the Scotts were indebted to Clara F. Miller upon promissory notes secured by mortgage upon certain real estate, not the real estate involved in this suit, which the Scotts had once owned, but had later sold subject to the Miller mortgage; and the Scotts were also the owners of certain other real estate, the real estate involved in this suit, upon which there were two valid and subsisting mortgages, aggregating over $7,000, which mortgages were owned by a man by the name of Patterson, and his wife. On February 14, 1922, Mrs. Miller brought her action to foreclose her mortgage on the premises formerly owned by the Scotts, and to recover a judgment against the Scotts for any deficiency there might be. Before that time, the Pattersons had been pressing for payment of their mortgages on the premises then owned by the Scotts, and the Scotts had been attempting to negotiate a loan upon said

premises in order to pay the Pattersons, but the defendant Akron Savings & Loan Company would loan but $4,000 upon said premises; the value of real estate having suddenly decreased. Thereupon the Scotts applied to aforementioned Catherine and John Blank, the father and mother of Mrs. Scott, for financial assistance, and as a result of negotiations the Pattersons agreed to cancel their mortgages upon the property upon the receipt of $5,700 cash, which amount was to be raised by giving a first mortgage on said premises for $4,000 to the Akron Savings & Loan Company, and a second mortgage for $1,700 to Catherine and John Blank.

The loan company furnished the $4,000, and the Blanks furnished the $1,700, and the Patterson mortgages were paid off on February 16, 1922, two days after the suit hereinbefore mentioned was brought by Mrs. Miller. The first mortgage to the loan company for $4,000 was promptly executed and recorded, but there was a delay of some time in the execution and delivery of the mortgage to the Blanks; the same not being executed until June 7, 1922, and not recorded until August 10, 1922. In the meantime, on July 10, 1922, judgment was taken against the Scotts in the suit brought by Mrs. Miller, which, by operation of law, became a lien from the first day of the term, which was April 3, 1922, and thereafter, on August 16, 1922, an execution upon said judgment was levied upon the property owned by the Scotts and involved in this suit.

Mrs. Miller was not a party to the arrangement by which the money was raised to pay off the

Patterson mortgages, nor did she have any notice whatever of that transaction.

Although the Blanks are related to the Scotts, there is no room to doubt that when they mortgaged their own property to raise the $1,700 which they gave to the Scotts for the purpose, and which was used for the purpose, of paying off a part of the Patterson mortgages, there was a *bona fide* agreement that they were to be secured by a second mortgage upon the Scott property, so that the loan company mortgage and the Blank mortgage should take the place of the two mortgages to the Pattersons which were canceled in carrying out the agreement of the parties; but, as has been said, Mrs. Miller knew nothing of such agreement.

In this situation it is the claim of the Blanks that they are entitled to be subrogated to the rights of the Pattersons under their mortgages; that said Patterson mortgages should be considered in equity as valid liens upon the property to the extent of the money contributed by the Blanks to pay off same. On the other hand, it is claimed by Mrs. Miller that the Blanks are not entitled to be so subrogated and that the lien of her judgment has preference over the claim of the Blanks.

In considering this matter, we will make a summary of the dates of the transactions involved:

The Miller suit was begun February 14, 1922; the Patterson mortgages were paid February 16, 1922; the mortgage to the Blanks for the money with which to pay the Patterson mortgages was executed June 7, 1922; the Miller judgment was taken July 10, 1922, but became a lien on April 3, 1922; the mortgage to the Blanks was filed for

record August 10, 1922; the execution on the Miller judgment was issued August 11, 1922, and levied on the premises August 16, 1922.

"Subrogation is founded on the principles of equity and benevolence, and is not to be allowed in favor of one who has permitted the equity he asserts to sleep in secrecy until the rights of others would be injuriously affected by its assertion and enforcement. * * * However, subrogation is often allowed notwithstanding there is more or less negligence, and it may be said that negligence which does not increase the burdens of any lienholder does not prevent subrogation or bar the right thereto." 25 Ruling Case Law, p. 1393, Section 76.

"Where a loan of money is made on an agreement with the borrower that it is to be secured by a mortgage which shall be the first lien on property then incumbered with other liens that are to be paid off out of the money loaned, and they are so paid in order to give the lender the promised security, the latter is neither a stranger nor volunteer, but sustains such relation to the premises and the parties as will entitle him, if his mortgage prove defective, to subrogation to the rights of those whose liens were so paid." *Amick* v. *Woodworth*, 58 Ohio St., 86, 50 N. E., 47.

"As a general rule, one having an interest in or lien on property, who pays off for his protection a prior incumbrance upon it, is entitled in equity to be subrogated to all the rights of the prior encumbrancer, and to enforce the security for his reimbursement out of the incumbered estate. This equitable right, however, will not prevail

against intervening *bona fide* purchasers without notice, *or those occupying a like position;* nor does it belong to a mere stranger or volunteer who pays the incumbrance." *Id.*

"Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money, and, through some defect in the new mortgage or oversight as to other liens, the money cannot be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released, but not as against a *bona fide* lienholder who acquired his lien after the release of the old mortgage without notice of such agreement and payment." *Straman, Admr.,* v. *Rechtine,* 58 Ohio St., 443, 51 N. E., 44.

Under the facts in this case, and the principles of law quoted above, the Blanks are entitled in equity to be subrogated to the rights of the Pattersons, unless Mrs. Miller, by virtue of her judgment, occupies a position like unto a *bona fide* purchaser without notice, as stated in *Amick* v. *Woodworth,* 58 Ohio St., 86, 50 N. E., 437, or unless she is a *bona fide* lienholder, who, without notice, acquired her lien after the release of the old mortgage, as stated in *Straman, Adm'r.,* v. *Rechtine,* 58 Ohio St., 443, 51 N. E., 44.

As we construe these cases in the light of

general principles and decided cases, we do not think that the Supreme Court meant to place "a *bona fide* lienholder who acquired his lien after the release of the old mortgage without notice" in the position of "a *bona fide* purchaser without notice." Such lienholder occupies the position of such purchaser only in the event that his burdens are increased by the allowance of the subrogation.

Mrs. Miller's position is not that of a *bona fide* purchaser. "A judgment creditor is not a purchaser, nor entitled to the privileges of that position." *Tousley* v. *Tousley,* 5 Ohio St., 78.

Was she a *bona fide* lienholder, whose burdens would be increased by the application of the doctrine of subrogation?

If her claim had been reduced to a judgment so that she had an actual lien on the property before the Patterson mortgages were canceled, then there could be no question, under the authorities, but that the Blanks, having paid a part of the Patterson mortgages under an agreement for a like lien upon the property, would be entitled to such a lien as against the judgment of Mrs. Miller.

Why should the fact that Mrs. Miller's judgment on a claim then existing, and on which she had begun suit, was taken after the Patterson mortgages were canceled, make any difference? She did not extend credit because the Patterson mortgages were canceled, nor did she advance any money or change her position one iota because of the cancellation of the Patterson mortgages. All she did was to reduce her claim, upon which she had already sued, to a judgment; she merely perfected a lien which she was entitled to. Why

should she have any greater rights than she would have had if her lien had already been perfected? She is a *bona fide* lienholder in the sense of a proper motive, but not in the sense of reliance upon a given situation; that is, not in the sense of parting with any value for the lien or of obtaining it because of the change brought about by the cancellation of the Patterson mortgages. She was seeking the lien when the mortgages were canceled, and if the first day of the term of court had been February 15, instead of April 3, her lien would have been perfected, in contemplation of law, before the Patterson mortgages were canceled. Her claim was subject to the Patterson mortgages, and if her claim is now held to be subject to the Patterson mortgages, to the extent of the money advanced to pay them, her burdens will not be increased; they will, in fact, be lessened, for that sum is considerably less than the amount of the Patterson mortgages.

"One who pays a debt at the instance of the debtor, under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, may, as against the debtor and the debtor's estate, be subrogated to the benefit of such security and of the debt which he has discharged." Sheldon on Subrogation, Section 247.

Here there was a positive agreement to that effect, and hence, as between the Blanks and the Scotts, the transaction created an equitable right in favor of the Blanks to have the lien of the Patterson mortgages continued in force as security

for the money they advanced to pay said mortgages. If Mrs. Miller, without notice of such equity, had loaned money to the Scotts, and taken a mortgage on the property, or if she had been a *bona fide* purchaser of the property from the Scotts, her interest in the property would have been superior to such equity of the Blanks; but, she having done nothing on account of the payment of the Patterson mortgages by the Blanks, it would be manifestly inequitable to permit her to benefit by the cancellation of the Patterson mortgages at the expense of the Blanks, who furnished a part of the money to pay such mortgages upon the express agreement that the lien of such mortgages should be transferred to them by the execution of a new mortgage to take the place of the Patterson mortgages.

Mrs. Miller is not a subsequent *bona fide* lienholder whose burdens will be increased by the subrogation which the Blanks are entitled to as between them and the Scotts, and therefore the Blanks are entitled to be subrogated to the lien of the Patterson mortgages to the extent that the same were paid by them, and such lien is prior to the lien of the Miller judgment.

It is argued that the lien of the Miller judgment is superior to the claim of the Blanks because when such lien attached the Patterson mortgages were canceled and the Blanks had no mortgage for their claim.

As to this phase of the case, there are certain principles of law which it is proper to consider.

Ordinarily, and except to the extent that the rule has been modified by statute, "an execution

lien, like that of a judgment, attaches to the real rather than the apparent interest of the defendant. If the title held by him is subject to equities of third persons, the execution lien is also subordinate to such equities. 'The fountain cannot rise higher than its source.' In all attempts to acquire rights under the execution, the title of the defendant must be regarded as the source beyond which it will be impossible to proceed. If his title is impaired by equities or liens which are susceptible of assertion against him, they will be equally susceptible of assertion against the execution lien; and the lien may be destroyed, or, more correctly speaking, may be proved never to have existed, by evidence of some pre-existing conveyance, of which the judgment creditor had no actual or constructive notice when his lien was supposed to have attached." 2 Freeman on Executions (3d Ed.), Section 195.

See, also, 15 Ruling Case Law, subject, "Judgments," p. 798, Section 255; *Atlantic Trust Co.* v. *Vigilancia,* (D. C.), 68 F., 781, 784.

"When a husband, who holds the record title of real estate belonging to his wife, represents to his creditors that he is the owner of the property, but his wife did not know of, or join in, these representations, the husband's creditors cannot subject the property to the payment of his debts." *McFarland* v. *Purper,* 17 C. C., (N. S.), 20, 31 C. D., 694.

This principle of law is recognized in *Manley* v. *Hunt,* 1 Ohio, 257; *Butler* v. *Heirs of Brown,* 5 Ohio St., 211; *Minns* v. *Morse, Dodge & Willey,* 15 Ohio, 568, 45 Am. Dec., 590; *Lefferson* v. *Dallas,* 20 Ohio St., 68; *Churchill* v. *Little,* 23 Ohio St., 301, 308; and *Mannix, Assignee,* v. *Purcell,* 46 Ohio St., 102,

at page 135, 19 N. E., 572, 2 L. R. A., 753, 15 Am. St. Rep., 562.

In Ohio this general rule cannot be invoked so as to render the lien of a judgment inferior to the lien of a prior unrecorded mortgage. *Van Thorniley* v. *Peters*, 26 Ohio St., 471; *National Bank of Columbus* v. *Tennessee Coal, Iron & Rd. Co.*, 62 Ohio St., 564, 57 N. E., 450. This is so because our recording statutes provide that mortgages shall "take effect from the time they are delivered to the recorder" and they are considered as non-existent as to third parties until left for record, and until recorded they are "wholly inoperative to convey or incumber the land, either at law or in equity." *Tousley* v. *Tousley*, 5 Ohio St., 78, 86.

*But the claim of the Blanks is not merely the right in equity to a mortgage, but it is an equitable right to have the lien of the Patterson mortgages preserved for their benefit.*

If the Blanks had merely advanced money to the Scotts with the agreement that the Scotts were to secure the loan by a mortgage on their property *which was then clear of mortgages or liens,* the Blanks would then possibly, and at best, have had only an equitable right to a mortgage on the property of the Scotts, and until that right eventuated into a recorded mortgage it would be inferior to the lien of a judgment recovered against the Scotts, *because of the effect given to the recording statutes;* but such statutes do not in any way change the general rule heretofore quoted from Freeman on Executions as to other equitable claims; as to these, general principles govern, and, upon general principles, it is clear that a judgment creditor acquires a lien only upon the interests of

his debtor, and is bound to yield to every claim
that can be successfully asserted against him.
*Tousley* v. *Tousley*, 5 Ohio St., 78; *Miller* v. *Albright*, 60 Ohio St., 48, 53 N. E., 490.

Our conclusion is that the equitable right of the
Blanks to have the lien of the Patterson mort-
gages remain in force was an equity enforceable
against the Scotts at the time that the lien of the
Miller judgment attached, and that such judgment
lien attached subject to such equity; that in. any
event, as has been heretofore said, the cancella-
tion of the lien of the Patterson mortgages did not
harm or in any way affect or increase the burdens
of Mrs. Miller; that her judgment does not pre-
vent subrogation or bar the right thereto; and
that, therefore, the Blanks are entitled to be sub-
rogated, to the extent of the amount paid by them,
to the rights of the Pattersons under their mort-
gages, subject to the mortgage of the loan company.

While we do not extend this opinion to com-
ment upon the claims made that the Blanks waived
their right to subrogation, or lost it by laches, we
have carefully considered such claims, and find
that the facts do not warrant a holding that such
right was either waived or lost.

A decree may be drawn in accordance herewith.

*Decree accordingly.*

FUNK, P. J., and PARDEE, J., concur.