Spalding, J.
The several bills of exceptions will be noticed in their order.
*109 In bill of exceptions “A,” we find that the deposition of one-Levi Marlow, introduced by the defendant' in error, was objected to because the notice was not sealed up and returned with the deposition.
The bill shows that the notice was found among a large quantity of depositions on file in the cases that said paper referred to, and the certificate of the magistrate showed the deposition to have been taken under “ the inclosed notice.”
The proper service and transmission of the notice was proved by the oath of one of the attorneys.
The objection, if available in any case, was not well taken in this instance, as the strong presumption was that the notice had been inclosed in the deposition by the justice, and had become detached by constant handling of the papers.
It is objected that the notice, when produced, was found to-cover more than one suit. It certainly gave notice to the party of an intention to take depositions in the suit then on trial, and it is difficult to see what inconvenience could arise from taking, on the same day, and at the same place, other depositions between other plaintiffs and the same defendants, if there was sufficient time to perform the whole work. If the rights of the party were-prejudiced by reason of the attempt to take too many depositions within a short space of time, the showing of that fact would have had weight with the court. In this case, the defendants paid no attention to the notice. They did not appear at all, and, of course had no reason to object that too much was sought to be done.
These formal objections, however, should have been noted upon the depositions, within the rules of court, to have *entitled them to any regard. They came too late, after the jury was impaneled.
This bill of exceptions “A” also shows that the deposition was permitted to go to the jury, although objected to by defendant’s counsel as containing incompetent evidence.
By a subsequent entry upon the journal, the court corrected an error that had intervened here, and show that the deposition was-not, in fact, read as evidenee-in-ehief, at all, and but a single paragraph as rebutting testimony.
In bill of exceptions “B,” it is said that plaintiff’s counsel, on cross-examination, put a question to the witness on the stand, upon-an assumption that had no existence in the testimony in chief. *110 The language was this : “You have stated that John Marlow said it must have been the Scotts that had burned the wheat, and yon have also stated that it was pretty much in the mouth of everybody that it was the Scotts. I now ask you what reasons were mentioned by any of the persons alluded to, for suspecting the Scotts ? ”
It is objected that the witness had said nothing about any conversation except the one he himself had with John Marlow.
Wo have but a small portion of the testimony given to us in the ' bill of exceptions, but, upon the supposition that the counsel for plaintiffs in error is correct in his statement of what the testimony was, there could be no impropriety in allowing the question to be put. The witness was on his cross-examination, and consequently much latitude was allowed to the examiner. But aside from that, he had said that Marlow threw suspicion on the Scotts. The attorney of Marlow might, with propriety, inquire, what reasons were given at the time for such suspicions.
The charge of the court is contained in bill of exceptions “ C.” The judge gives sundry definitions of the term “probable cause,” as laid down by distinguished jurists, and then, after directing the jury to ascertain how far the facts are proved, says: “ Apply to them the test, the rule of law which I have laid down to you. Ask yourselves conscientiously—‘Are the *facts and circumstances that we have found, so strong in themselves as to warrant an impartial, ingenuous, and reasonable man, of common capacity, with the caution usually exercised by such a man in the defendant’s situation, but not under the influence of any improper motive, to believe the plaintiff guilty of the crime charged against him?’ If they are sufficient to warrant that belief, in such a mind, that conclusion, when deliberately arrived at by you, will terminate your labors; and you will return to this court your verdict of not guilty.
“ If your conclusion on the facts relied on to show the existence of reasonable or probable cause, shall be adverse to the defendants, your deliberations will proceed.”
We have examined this whole charge with some care, and really can see no just cause for complaint by either party.
The judge has been somewhat diffuse in giving his views on “probable cause,” but they do not substantially differ from the sensible and concise definition laid down by the court in Munn v. *111 Dupont, 3 Wash. C. C. 37. “What, thon, is the meaning of tho term ‘probable cause?’ We answer, a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.”
We are content to adopt this last, as the definition of what in tho law constitutes “ probable cause.” There is no force in the objection that the judge did not instruct the jury that the facts relied on by defendants below, did, or did not amount to probable «ausc. “Probable cause ” is a mixed question of law and fact; and if the facts are contested, the court must leave them to the jury with instructions as to what is “probable cause.” It is insisted, in the third p[ace, that the judge committed an error in refusing to instruct the jury, that the “ binding ,over ” by the magistrate was conclusive evidence of probable cause. It is sufficient to say, that it is the opinion of this court that the judge went far enough when he said to the jury, that after an exhibition of the affidavit, warrant, and ^transcript of the justice’s docket, showing that the accused was bound over to court, it was incumbent on the plaintiff below to show affirmatively that there was no reasonable or probable cause for the prosecution. The notion could not be countenanced for a moment, that a “ binding over to court” by an examining officer merely, should be taken as conclusive evidence of probable cause. It was claimed in behalf of defendants below, that they acted under the advice of counsel in prosecuting the plaintiff. It appeared that the warrant was taken out on August 4, 1849, but the arrest was not made under it until the 30th day of the following October. The judge instructed the jury that “ if, after the advice of counsel, and before tho delivery of the warrant, new and material facts came to the knowledge of the defendants, tending to lesson the probability of the plaintiff’s guilt, and which were not communicated to the counsel for his further opinion, then the advice previously given could be no protection to the defendants for thus delivering the warrant and further prosecuting the plaintiff.”
This is the fourth specification of error in the charge of the court, and we are clearly of opinion that the instruction was right. If, under the advice of counsel, a person swears out a warrant against his neighbor, and, before he causes the arrest, shall ascertain his innocence of tho charge, it will be difficult to see by what *112 system of ethics he can be justified in'depriving that neighbor of his liberty, even though he was protected by professional advice,, in taking out the warrant.
In bill of exceptions “D,” it is said that John Marlow gave in evidence a transcript of a justice of the peace, showing that the criminal prosecution against him was commenced on August 4, A. d. 1849; that he then gave parol evidence tending to show that Jacob Ash had made declarations in Indiana, in the month .of October, setting forth that he had not then commenced his prosecution against Marlow, but should do so on his return to Ohio. This, it is claimed, is impeaching a record by parol evidence.
The objection is really too trifling to merit serious refutation, *but it is very much in character with the rest of the case, as presented by plaintiffs in error. It became important to show that between the issuing of the warrant in August, and the arrest of the accused persons in October, the defendants below had become possessed of information that should have exonerated the plaintiff below from the charge preferred against him. The transcript of the justice was not impeached. The parol testimony was entirely consistent with the facts set forth in that documents It only served to show that Jacob Ash treated the prosecution as commenced at the time of the arrest, and not at the date of the warrant.
In bill of exceptions “E,” complaint is made that the court caused an entry to be made on the record, doing away with the-force of bill of exceptions “A.”
This matter has been already noticed. The court retains full control over every part of its record until the close of the trial term, and may, on any day and at any moment, cause corrections to be made, to comport with truth and justice, as well in bills of exceptions as in their own journal, which is signed every morning by the president judge. We are satisfied that the trial below, although excessively tedious, was nevertheless fair in every particular, and that the rulings of the court were consonant to law.
The judgment will be affirmed, with costs.