Avery, J.
This case originated in the court of common pleas of Henry county, where suit was brought by defendant in error to enjoin further proceedings and payments by the plaintiffs in error, state and county officers, namely the state highway commissioner, state auditor, state treasurer, county commissioners, .county auditor, and county treasurer, under a contract entered into on August 17, 1916, between one J. A. Westrick and the state of Ohio, acting by Clinton Cowen, its state highway commissioner.
On appeal, the court of appeals of Henry county on November 11, 1919, entered a final judgment enjoining the county commissioners, county auditor and county treasurer of Henry county from expending any funds or making any payments on account of the construction or improvement of the section of the road described in the petition, because of the failure of the state highway commissioner to comply with the requirements of Section 1206, General Code, with respect to advertising for bids. The state officers, state highway commissioner, state auditor, and state treasurer, were dismissed.
*389 The defect with respect to the advertising is set forth in the fifth finding of fact in the journal entry of the court of appeals:
“Fifth. That the State Highway Commissioner of the State of Ohio advertised for bids for the construction óf said section of highway by notice published in The Henry County Signal on August 10 and August 17, 1916, and in the Northwest News on August 10 and August 17, 1916; that The Henry County Signal and Northwest News are newspapers of the two dominant political parties published and of general circulation in Henry county, Ohio; that said publication of notice to bidders in The Henry County Signal on August 10 and August 17, 1916, and in the Northwest News on August 10 and August 17, 1916, was the only publication of such notice made by said State Highway Commissioner; that under the terms of said notice so published all bids made by contractors for the construction of said section of highway were to b¿ on file and opened on the seventeenth day of August, 1916, and that all bids made, including that of J. A. Westrick, were on file and opened on said seventeenth day of August, 1916A
Section 1206, General.Code, provides:
“Upon the receipt of a certified copy of the resolution of the county commissioners or township trustees, that such improvement be constructed under the provisions of this chapter [G. C. §§ 1178 to 1231-3], the state highway commissioner shall advertise for bids for two consecutive weeks in two newspapers of general circulation and of the two dominant political parties published in the county' *390 or counties in which the improvement, or some part thereof is located, if there be any such papers.published in said counties, but if there be no such papers published in said counties then in two newspapers having general circulation in such counties, and such commissioner shall also have authority to advertise for bids in such other publications as he may deem advisable. Such notices shall state that plans and specifications for the improvement are on file in the offices of the state highway commissioner and the county highway superintendent, and the time within which bids therefor will be received.
“The state highway commissioner shall award the contract to the lowest and best bidder.”
The court of appeals held in its opinion:
“The requirement contained in Section 1206, General Code, that notice of the receipt of bids for the construction of the road be advertised for two consecutive weeks is mandatory.
“When a contract has been entered into for the construction of such an improvement without advertisement for said period, payment by the county officers on account of such construction would constitute a misapplication of public moneys, against which a taxpayer, suing in behalf of the public, is entitled to a perpetual injunction.”
This holding was carried into effect by the judgment aforesaid, entered on November 11, 1919.
A motion to certify the record of the court of appeals was filed in this court December 4, 1919, was heard on January 15, 1920, and overruled on January 27, 1920. A rehearing- of the motion to *391 certify was applied for on February 20, 1920, on the representation of counsel for plaintiffs in error that the court of appeals had not considered or given effect to [Section 12078-1],* General Code, (P. & A. Supp.), with respect to the case, and that this proposition had not been presented to this court on the former hearing. On that representation this court set aside its former order overruling the motion to certify, allowed the motion for a rehearing, and, on rehearing, on April 20, 1920, granted the motion to certify, for the purpose of considering the application of [Section 12078-1], General Code, (P. & A. Supp.), i. e. Section 301 of Chapter XIII of the act of the general assembly passed May 17, 1915 (106 O. L., 574, 662), entitled “An Act to provide a system of highway laws for the state of Ohio, and to repeal all sections of the General Code, and acts inconsistent herewith.”
We are of opinion that Section 301 of said act entitled “An Act to provide a system of highway laws for the state of Ohio, and to repeal all sections of the General Code, and acts inconsistent herewith,” passed May 17, 1915 (106 O. L., 574, 662), has no application to the case at bar. Said Section 301 appears with Section 300 in Chapter XIII of the act above mentioned, a chapter entitled “Curative Provisions.” These two sections must be read together, and when so read it is manifest that both have application only to proceedings started after May 10, 1910, under Sections 6956-1 to 6956-16, inclusive, General Code, all of which sections, ex *392 cept Section 6956-16, are in that act of May 17, 1915, repealed. Section 301 is of temporary operation only, having relation to past or pending proceedings, and has no force or efficacy to cure defects in future proceedings of the state highway commissioner in the letting of contracts under the provisions of that act itself, but without compliance with the terms of one of the sections thereof. It is inconceivable that the legislature would provide that the state highway commissioner must advertise in a certain way for bids, and in the same breath provide that his failure in that respect, or in any other respect, should, notwithstanding, forever after be cured by Section 301. The failure of the legislature or the attorney general to give to this section of this act a permanent sectional number is significant in this connection. The designation [Section 12078-1], third volume of Supplement to Page & Adams’ Code, is only the numbering of the editor. Said Section 301 cam therefore have no operation to cure any defects in the proceedings of the state highway commissioner in the case at bar, which were had after the passage of that act, under certain sections thereof, but in violation of the provisions of Section 199 thereof, which is Section 1206, General Code (106 O. L., 634).
This finding should dispose of the case, because we were and are in accord with the decision of the court of appeals, and find, now, no error in this respect.
But it is now suggested by counsel for plaintiffs in error that the state has expressly ratified the contract in question by the passage, on December *393 18, 1919, of the act of the general assembly entitled “An Act providing for the validation and ratification of certain contracts of the state entered into through the state highway department” (108 O. L., pt. 2, 1122), and that this court must give effect to this action of the legislature in the case at bar.
Counsel for defendant in error, on the other hand, contend that said alleged curative act, which they charge was drawn to meet the very situation presented by this case, is unconstitutional by virtue of the provisions of Section 28, Article II of the Ohio Constitution, in that it purports to make legal and operative a void contract, and to do this of its own force and effect and without the intervention of any court; in other words, that it commands, and does not simply authorize, courts to carry into effect the contract upon such terms as shall be just and equitable.
Upon this claim the case of Hout v. Hout et al., 20 Ohio St., 119, has some bearing. In that case this court held that the power which Section 28, Article II of the Constitution, confers upon the legislature, and the powers which the legislature is authorized to confer upon the courts, are permissive and not mandatory. Brinkerhoff, C. J., said at page 126 of the opinion:
“Now, it is very clear, we think, that the power which this section of the constitution confers upon the legislative body, and the powers which the legislative body are authorized to confer upon the courts, are permissive and not mandatory powers, ‘The general assembly * * * may * * * authorise courts,’ etc., is the language. The general *394 assembly may put into exercise the powers granted in the section under consideration, or it may refrain from doing so without any disregard of a constitutional mandate; it may authorise courts to cure omissions, etc., but it cannot command them.”
It is, however, unnecessary for us to pass upon the constitutionality or unconstitutionality of the act in question, for on other general and well-recognized principles of law we are of opinion that the act has and can have no application to the case at bar. We can not and will not apply it to set aside the judgment of the court of appeals in this case.
It is well settled that the legislature has no right or power to invade the province of the judiciary, by annulling, setting aside, modifying, or impairing a final judgment previously rendered by a court of competent jurisdiction. People, ex rel. Lafferty, v. Owen, 286 Ill., 638, 3 A. L. R., 447, and annotation.
The judgment of the court of appeals in this case was final (Section 6, Article IV of the Ohio Constitution) unless under that section and Section 2 of the same article the case was one “of public or great general interest,” in which event this court “may direct” the court of appeals to certify its record here and “may review and affirm, modify or reverse the judgment of the court of appeals.” The practice established by this court requires a showing from the record, not only that a case is of public or great general interest, but also that error has probably intervened, in order to justify a motion to certify the record of a court of appeals, the judgment of which is otherwise final. As above stated, *395 the judgment of the court of appeals was entered November 11, 1919. The act in question was passed December 18, 1919, and filed in the office of the secretary of state January 29, 1920. This latter date, it will be noted, was after the motion to certify had been filed in this court, heard and overruled. The act went into effect April 28, 1920, which was after this court had reconsidered and allowed the motion to certify.
This court has held that the legislature cannot make a judgment which is final by the laws existing at the time it is rendered subject to review by a statute subsequently enacted (State, ex rel. Young, v. Hinckle, 67 Ohio St., 144), and we are of opinion that the legislature cannot change a rule of law binding upon the court of appeals at the time a final judgment is rendered by it and compel this court in determining whether error has intervened therein to consider or apply that change in a consideration of the record of the case in which such final judgment was rendered. Whether the record discloses error depends upon what the law was at the time the final judgment was rendered.
The judgment of the court of appeals was correct at the time it was rendered, and as to such judgment the act in question can have no retrospective operation. We do not find any intention of the legislature, to be gathered from the act itself, that it should have application to a case in which a final judgment was entered prior to its passage. If it be doubtful whether it was intended that this act should operate retrospectively, the doubt should be resolved against such operation. Allen v. Russell, *396 39 Ohio St., 336; opinion by Okey, J., pages 338 and 339.
But if such an intention could be gathered from the act, it would be, in our opinion, to that extent, unconstitutional and void, as an attempt on the part of the legislature to exercise judicial power, or a conferring by the legislature of appellate jurisdiction upon this court, unwarranted and unauthorized by the constitution.
In the case of State, ex rel. Young, v. Hinckle, supra, at page 151, Shauck, J., said:
“A statute of this character was considered in Hill et al. v. Sunderland, 3 Vt., 507, and it was adjudged to be void. In the course of the opinion the question was propounded as suggestive of an inevitable answer: ‘When will be the end of strife if not when a judgment is rendered which is final by the laws then existing?’ A judgment final when rendered is representative of property in its highest form, for there remains no condition or contingency to affect the vested right of the prevailing party. Attention to a few of the many harmonious cases will show that, for the reasons already stated, the act, if permitted to operate retrospectively, would affect rights which are so determined and established that it is not within the function of legislation to disturb them.”
If the charge of counsel for defendant in error were correct, that the act in question was drawn for the express purpose of meeting the situation created by this case, the act would fall within the prohibition stated by the learned author of Cooley’s Constitutional Limitations (7 ed.), 136:
*397 “Legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the courts.”
But on the direct question involved here the case of The Schooner Aurora Borealis v. Dobbie, 17 Ohio, 125, is in point. That case was an action to recover for work and labor done upon a ship, in which the court of common pleas rendered judgment for the defendant on the ground that the statute under which the action was brought had no extra-territorial operation. After that judgment, and before the matter came on to be heard on error in this court, the legislature passed an act declaring that the statute should have such extra-territorial operation, but this court declined to make that act applicable to the case so pending on error. In the opinion, Read, J., said at page 127:
“It is the right of the legislature to enact laws, and the province of the court to construe them. The legislature has no power to enact a law, declaring what construction or decision the court shall make upon acts under which rights and liabilities have already been acquired or incurred. The court have put a construction upon the first acts alluded to, and that construction is binding upon all existing cases. The explanatory act operates prospectively, and has, from the time of its passage, the *398 force and effect of a law. But as far as it assumes to encroach upon the province of the court, and assumes to give construction to existing acts, to govern the decisions of the court, as to cases pending, it is judicial; and as the constitution confers judicial power upon the courts, and withholds it from the legislature, to that extent such act will be inoperative. As a law, such- an act will be enforced; as a construction of previous acts, under which cases are already pending in the courts, it will be held void.”
So also is the case of McCullough v. Virginia, 43 L. Ed., 382 (172 U. S., 102):
“A rightful judgment against the state gives a" vested right which cannot be taken away pending writ of error, by a repeal of the statute which authorized the state to be sued.” (Headnote 7.)
Mr. Justice Brewer, in delivering the opinion of the court, said at page 390 (172 U. S., 123):
“The writ of error to the Court of Appeals of the State brought the validity of that judgment [the judgment of'the circuit court of the City of Norfolk] into review, and the question presented to that court was whether at the time it was rendered it was rightful or not. If rightful the plaintiff therein had a vested right which no state legislation could disturb. It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases. So, properly, *399 the Court of Appeals, in considering the question of the validity of this judgment, took no notice of the subsequent repeal of the act under which the judgment was obtained.”
Without extending this opinion to too great a length, we may, perhaps, with profit, refer to cases in other states bearing on the questions we have here discussed.
People v. Moore, 1 Idaho, 662:
This case involved the validity of the assessment of taxes on certain shares of bank stock. The district court held the assessment invalid. The case came into the supreme court of Idaho, and after the appeal had been perfected the legislature passed a curative act to validate such assessments. The court declined to apply the act to the case so pending.
Prickett, J., at page 670, said:
“It follows that the district court did not commit any error in deciding that the taxes were invalid.
“But it is claimed by the appellant that the defects in the assessment have been cured by the late act of the legislature, and that this court must be governed in its decision by the law as it now is. We can not agree with counsel in this respect. This cause is pending in this court upon what is denominated an appeal, which differs from the writ of error only in the mode of bringing the case up for review, and in the form .of proceeding: The principles governing the decision are the same as- upon writ of error, and the questions to be decided are: Does the record disclose error? Was there error *400 in the judgment of the court below at the time it was rendered ? * * *.
“The question now to be decided is whether there was error in the judgment below at the time it was rendered. And we are of the opinion there was not.
“It is the first principle of legislation that all laws are to commence in futuro, and nothing but the most unequivocal expression can justify a retrospective operation. There is nothing in the act in question which shows an intention on the part of the legislature that it should be applicable to this case. It is not to be presumed that, by its mere act, the legislature intended to confer upon the appellate court power to determine the appeal, not by the pre-existing rules of law which fixed and controlled the rights of the parties, under which the defendant elected whether he would incur the costs of a defense, but by a law empowering the court to do what could not be done before. If such intention was manifest from the act, we should be obliged to decide, both upon principle and authority, that it was not within the legitimate power of the legislature to extend the act, by retrospect, to render the judgment erroneous which was entered before its passage, and thus deprive the defendant of a vested right to his judgment, subject to be reversed only for error of the district court.”
Barnet v. Barnet, 15 Serg. & R. (Pa.), 72.
In delivering the opinion of the court, Tilghman, C. J., said at page 73:
“Since the judgment in this case in the Court of Common Pleas, an act of assembly has been passed *401 for curing defects in the acknowledgment of deeds by married women. Had this act been passed before the judgment below, it would have cured the defect above mentioned in the defendant’s acknowledgment, and there would have been error in the court’s opinion. It is our unanimous opinion, that there is nothing unconstitutional in this act of assembly, but it is also our unanimous opinion that it does not extend, by retrospect, to render a judgment erroneous, which was entered before its passage.”
Menges v. Dentler, 33 Pa. St., 495.
The first five paragraphs of the headnote are:
. “The constitution vests all judicial powers in the courts of justice, and forbids their exercise by the legislature.
“The ‘law of the land,’ which gives character to a case, and by which it is to be decided, is the law that is inherent in the case, and constitutes a part of it, when it arises as a complete transaction between the parties.
“If this law be changed or annulled, the case is changed, and justice denied, and the due course of law violated. A law that is enacted after a case has arisen can be no part of it; nor is any law relating merely to the forms of the remedy.
“The bill of rights requires that the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered, in its substance, by any subsequent law.
*402 "Therefore, an Act of Assembly, making valid a sheriff’s sale, which had been decided by this court to pass no title, is unconstitutional and void.”
Humphrey v. Gerard, 83 Conn., 346.
Prentice, J., said at pages 352 and 353:
"The presumption is that statutes are intended to operate prospectively. They should never be construed as having a retrospective effect unless their terms show clearly and unmistakably a legislative intention that they should so operate.
"It would, however, avail Gerard not at all, if the intent of the legislature to give to the Act a retrospective operation was indisputably shown by its terms. We have no occasion to inquire whether or not the rights of the parties who claim through Mrs. Maltby were not so fixed after her death, and the distribution of her estate by the law as it then was, that any attempt to interpose legislative action of the character of the present would be forbidden as an interference with vested rights. Certain it is that when those rights had been judicially passed upon and declared by a judgment of the Superior Court, they then became vested as so declared, and so vested that they were removed beyond the reach of legislative action. * * * A judgment is a contract which, after the right of appeal has expired, has ripened into an unchangeable one, and becomes property. It has then passed beyond the reach of legislation. * * * A final judgment when rendered is the representative of property in its highest form and cannot be disturbed by legislation.”
*403 The Charles Baumbach Co. v. Singer, 86 Wis., 329.
Winslow, J., at page 329:
“The respondent is a judgment creditor of the firm of Schwartz & Co., and sued out garnishee process against Singer, who is the assignee of said firm under a voluntary assignment. It appeared, without dispute, that the court commissioner who took the bond of the assignee failed to endorse thereon his approval thereof. Upon this ground, the trial court held the assignment void and the garnishee liable.
“After the judgment in this case, ch. 276, Laws of 1893, was passed, which, referring to such bonds, attempts to provide that ‘all bonds heretofore taken and filed * * * by said court commissioner are hereby declared to be sufficiently approved and valid.’ This act cannot affect the judgment in this case.”
Without saying more, we conclude, upon these considerations, that the judgment of the court of appeals in this case must be affirmed.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Johnson and Robinson, JJ., concur.

 Reporter's Note — This Section appears as bracketed Section 12078-2, General Code, in Page’s Compact Edition.